## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) |
|  | ) |
|  | ) |
| ONEX AMERICAN HOLDINGS, LLC, | ) |
|  | ) |
| Appellant, | ) |
|  | ) |
| v. | ) |
|  | ) |
| RICHARD M. KIPPERMAN, | ) |
|  | ) |
| Appellee. | ) |
|  | ) |
| In re: | ) |
|  | ) |
| MAGNATRAX CORPORATION, | ) |
|  | ) |
| Reorganized Debtor. | ) |
|  | ) |

Civil Action No. 07-CV-263 (SLR)

Chapter 11

Case No. 03-11402 (KG)

### OPENING BRIEF OF APPELLANT ONEX AMERICAN HOLDINGS, LLC

COZEN O'CONNOR
Mark E. Felger (No. 3919)
Jeffrey R. Waxman (No. 4159)
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, Delaware 19801
Telephone: (302) 295-2000

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Alan W. Kornberg
Maria T. Vullo
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000

*Attorneys for Onex American Holdings, LLC, Appellant*

Dated: October 17, 2007

# TABLE OF CONTENTS

**Page**

JURISDICTION .................................................................................................................. 1

NATURE AND STAGE OF THE PROCEEDING ........................................................... 1

QUESTION PRESENTED .................................................................................................. 1

APPLICABLE STANDARD OF REVIEW ...................................................................... 2

PRELIMINARY STATEMENT ........................................................................................ 2

STATEMENT OF FACTS ................................................................................................. 4

A.    The Debtors ............................................................................................................ 4

B.    The Creditors' Committee, the Debtors, and the Senior Lenders Agree to the Plan .......... 4

C.    The Debtors "Crammed Down" the Plan On Appellant Pursuant to
      Section 1129(b) of the Bankruptcy Code ................................................................ 5

D.    Creditors Holding Only Approximately $12 Million in Claims Opt Into the Trust. ......... 8

E.    The Plan is Substantially Consummated and the Debtors' Cases Are Closed. ................. 9

F.    The Trustee Files a $600 Million Complaint in Georgia. .................................... 10

G.    The Bankruptcy Court Order. .............................................................................. 11

ARGUMENT .................................................................................................................... 12

A.    The Issues Raised by Appellant are Ripe Because They Present a Controversy
      Between Adverse Parties Based On Fully Developed Facts and Appellant Has
      Suffered Actual Harm. .......................................................................................... 13

      1.    The Parties Are Sufficiently Adverse. .................................................... 14

      2.    The Instant Dispute Turns on a  Question of Law, Not Disputed Facts. ........... 15

      3.    The Trustee Has Violated and Continues to Violate Appellant's Rights. ......... 15

B.    The Bankruptcy Court Should Have Remedied the Trustee's Abuse of the Judicial
      Process. .................................................................................................................. 19

C.    The Bankruptcy Court's Decision Would Not Interfere with the Georgia Action. ......... 20

CONCLUSION ................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Casse* v. *Key National Bank Association (In re Casse)*, 198 F.3d 327 ........................................... 21

*In re Cassidy*, 892 F.2d 637 ................................................................................................. 19

*In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d 1184 ............................................... 21

*Montrose Medical Group Participating Sav. Plan* v. *Bulger*, 243 F.3d 773 ............................ 2, 12

*Zinchiak* v. *CIT Small Bus. Lending Corp. (In re Zinchiak)*, 406 F.3d 214 ............................ 2, 22

*In re Dynamic Tours & Transp., Inc.*, 359 B.R. 336 ................................................... 14, 16, 19, 22

*In re Exide Techs.*, 303 B.R. 48 .............................................................................................. 5, 17

*Fleck* v. *KDI Sylvan Pools, Inc.*, 981 F.2d 107 ............................................................................ 19

*Forklift LP Corp.* v. *iS3C, Inc. (In re Forklift LP Corp.)*, 363 B.R. 388 ...................................... 20

*In re Future Energy Corp.*, 83 B.R. 470 ...................................................................................... 18

*In re Genesis Health Ventures, Inc.*, 266 B.R. 591 ................................................................... 6, 17

*Howard Delivery Serv., Inc.* v. *Zurich America Insurance Co.*, 126 S. Ct. 2105 .......................... 19

*Jamaica Shipping Co., Ltd.* v. *Orient Shipping Rotterdam, B.V. (In re Millennium Seacariers)*, 354 B.R. 674 ....................................................................................................... 21

*In re Kindred Healthcare, Inc.*, Nos. 99-3199, 2003 WL 22000598 ...................................... 16, 19

*Krystal Cadillac-Oldsmobile GMC Truck, Inc.* v. *General Motors Corp.*, 337 F.3d 314 ....... 12, 19

*Landis* v. *North America Co.*, 299 U.S. 248 ................................................................................. 13

*In re MCorp Finance, Inc.*, 137 B.R. 219 ................................................................................... 17

*Maloney* v. *Gordon*, 328 F.Supp.2d 508 .................................................................................... 13

*McDonald* v. *Bank Finance (In re McDonald)*, 336 B.R. 380 ................................................. 16, 19

*Mellon Bank, N.A.* v. *Official Comm. Of Unsecured Creditors (In re R.M.L., Inc.)*, 92 F.3d 139 ................................................................................................................................ 1

*NE Hub Partners, L.P.* v. *CNG Transmission Corp.*, 239 F.3d 333 ............................................... 14

*In re O'Brien*, 188 F.3d 116 ............................................................................................................ 2

*Olympic Coast Investment, Inc.* v. *Seipel*, No. 05-36170, 2006 WL 3431874 .............................. 13

*In re P.J. Keating Co.*, 168 B.R. 464 .............................................................................................. 17

*Peachlum* v. *City of York*, 333 F.3d 429 ........................................................................................ 14

*Presbytery of N.J.* v. *Florio*, 40 F.3d 1454 ............................................................................... 14, 15

*Ryan Operations G.P.* v. *Santiam-Midwest Lumber Co.*, 81 F.3d 355 .......................................... 19

*Scarano* v. *Central R. Co. of N.J.*, 203 F.2d 510 ...................................................................... 12, 19

*In re Swiftco, Inc.*, No. 85-07083-H1-5, 1988 WL 143714 ........................................................... 18

*Texas N.W. Railway Co.* v. *Atchison, Topeka & Santa Fe Railway Co. (In re Chicago,
     Rock Island & Pac. R.R. Co.)*, 860 F.2d 267 ...................................................................... 21

*In re Trans Max Techs., Inc.*, 349 B.R. 80 ...................................................................................... 17

*Travelers Insurance Co.* v. *Obusek*, 72 F.3d 1148 ..................................................................... 14, 15

*United Sav. Association of Tex.* v. *Timbers of Inwood Forest Associates (In re Timbers of
     Inwood Forest Assocs.)*, 793 F.2d 1380 ............................................................................. 17

*U.S. Home Corp.* v. *Los Prados Community Associate, Inc. (In re U.S.H. Corp. of N.Y.)*,
     280 B.R. 330 ............................................................................................ 14, 16, 21, 22

*In re Venuto*, 343 B.R. 120 .............................................................................................................. 14

*Warth* v. *Seldin*, 422 U.S. 490 ...................................................................................................... 14

*In re Weber*, 25 F.3d 413 ............................................................................................................... 21

*In re Woskob*, 305 F.3d 177 ............................................................................................................ 2

**STATUTES**

11 U.S.C. § 1126 ...............................................................................................................6

11 U.S.C. § 1129(a) ...........................................................................................................6

28 U.S.C. § 158 .................................................................................................................1

28 U.S.C. § 158(a) .............................................................................................................1

6 Del. C. § 18-805 ...........................................................................................................13

Pursuant to 28 U.S.C. § 158(a) and Rules 8009 and 8010 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Onex American Holdings, LLC ("Appellant") respectfully submits this opening brief in support of its appeal (this "Appeal") in *In re Magnatrax Corp.*, Ch. 11 Case No. 03-11402 (KG), from the Order (the "Bankruptcy Court Order") (D.I. 1) entered by the Bankruptcy Court for the District of Delaware (Gross, J.) (the "Bankruptcy Court") on April 16, 2007, denying Appellant's motion to reopen this chapter 11 case for the limited purpose of enforcing a confirmed chapter 11 plan (the "Motion to Reopen"). (App. 1.)

## JURISDICTION

This Court has jurisdiction pursuant to section 158(a)(1) of title 28 of the United States Code.[1]

## NATURE AND STAGE OF THE PROCEEDING

This is an appeal from the Bankruptcy Court Order, which denied Appellant's Motion to Reopen.

## QUESTION PRESENTED

The sole issue on appeal is whether the Bankruptcy Court erred as a matter of law in denying as not "ripe for adjudication" Appellant's Motion to Reopen. (Bankruptcy Court Order at 3.) Appellant seeks to reopen this chapter 11 case to obtain an order enforcing the Fifth Amended and Restated Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan") of Magnatrax Corporation ("Magnatrax") and its affiliated debtors (together with

---

[1] Although the Bankruptcy Court did not reach the merits of Appellant's claims (*see* Bankruptcy Court Order at 3), the District Court has appellate jurisdiction because the Bankruptcy Court Order was a final resolution of the Motion to Reopen. 28 U.S.C. § 158(a)(1); *see Mellon Bank, N.A. v. Official Comm. Of Unsecured Creditors (In re R.M.L., Inc.)*, 92 F.3d 139, 147 (3d Cir. 1996).

Magnatrax, collectively, the "Debtors") because the pending action in the United States District Court for the Northern District of Georgia (the "Georgia District Court") against Appellant and others brought by Richard M. Kipperman, the litigation trustee (the "Trustee") of the Magnatrax Litigation Trust (the "Trust"), constitutes a present and ongoing violation of the Plan and applicable law.

## APPLICABLE STANDARD OF REVIEW

A district court reviews a bankruptcy court's legal determinations *de novo*. *Zinchiak v. CIT Small Bus. Lending Corp. (In re Zinchiak)*, 406 F.3d 214, 222 (3d Cir. 2005); *In re Woskob*, 305 F.3d 177, 181 (3d Cir. 2002), *cert. denied*, 538 U.S. 961 (2003). A bankruptcy court's exercise of discretion based on a conclusion of law is similarly reviewed *de novo*. *Montrose Med. Group Participating Sav. Plan* v. *Bulger*, 243 F.3d 773, 780 (3d Cir. 2001) (a bankruptcy court "'abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts;'" reviewing *de novo* bankruptcy court's legal conclusion underlying reopening case) (quoting *In re O'Brien*, 188 F.3d 116, 122 (3d Cir. 1999)).

## PRELIMINARY STATEMENT

The Motion to Reopen is ripe for adjudication because the Trustee is violating, and will continue to violate, Appellant's rights under the Plan, the order confirming the Plan dated November 17, 2003 (the "Confirmation Order") (App. 2), and section 1129(b) of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). This violation perpetuates a litigation whose cost to Appellant is disproportionate to the amount actually at stake (no more than approximately $12 million rather than the $600 million sought by the Trustee), and which Appellant believes is frivolous. The Trustee's inflated claim also is estopped by express representations made to the Bankruptcy Court and the creditors. Immediate adjudication is

2

necessary to protect Appellant's rights and to address the Trustee's abuse of the judicial process to Appellant's detriment.

From 1999 through 2002, Appellant and several of its affiliates invested approximately $117.3 million in the Debtors. In 2003, due to forces beyond Appellant's control – an industry-wide recession, increased competition, and a spike in the cost of a raw material critical to the Debtors' business, among others – the Debtors sought chapter 11 relief. The Debtors' reorganization completely wiped out Appellant and its affiliates' investments and any shareholder interests they held in the Debtors. In return, the Bankruptcy Code guaranteed Appellant and its affiliates that as a matter of law no creditor would receive more than it was owed by the Debtors. The Trustee does not (and cannot) contest that Appellant received this right. Nonetheless, the Trustee and his offshore funding source, to which the Trustee assigned 50 percent of any recovery, now attempts to eliminate that basic protection.[2] By seeking to collect $600 million – more than 50 times what the Trust beneficiaries own in claims and the maximum amount allowed by the Plan, the Confirmation Order, and the Bankruptcy Code – the Trustee has violated and continues to violate Appellant's rights. He seeks to hit a bankruptcy jackpot irrespective of the plain language of the governing documents and the relevant statute. This flagrant, present violation of Appellant's statutory and court-ordered rights is ripe for adjudication; indeed, it demands redress.

Moreover, the Trustee's bloated claim blatantly contradicts earlier representations made to the Bankruptcy Court that the amount of the expected recovery against Appellant and others, if any, would be between $8 and $24 million. By now attempting a $600 million

---

[2]   As discussed below, the Trustee has agreed to pay 50% of any recovery to Insolvency Management Limited, a company that funds litigation in which it otherwise has no interest, in return for a percentage of the proceeds. *See infra* at 10-11.

recovery the Trustee is playing fast and loose with the Bankruptcy Court to his own advantage and the detriment of, among others, Appellant. The Third Circuit repeatedly has estopped similar attempts to gain an unfair advantage through inconsistent representations, and the same should be done here. Accordingly, this Court should reverse the Bankruptcy Court Order so that Appellant may proceed to enforce its rights under the Plan, the Confirmation Order and the Bankruptcy Code.

## STATEMENT OF FACTS

### A.    The Debtors

Prior to their chapter 11 cases, the Debtors were involved in the manufacture and marketing of metal building products. A combination of factors forced the Debtors to seek chapter 11 protection: a construction industry recession; significantly declining demand coupled with increased competitive pressure; and a federal tariff on certain types of steel imported into the United States, a core raw material used by the Debtors. (*See* Fifth Amended and Restated Disclosure Statement (the "Disclosure Statement") App. 3 at 41.) Higher steel costs — charged by some of the very creditors who opted into the Trust and now seek a huge litigation windfall — intensified the pressure on the Debtors, resulting in their filing voluntary petitions for chapter 11 relief in May 2003. (*See id.* at 41.)

### B.    The Creditors' Committee, the Debtors, and the Senior Lenders Agree to the Plan.

In August 2003, the Official Committee of Unsecured Creditors (the "Creditors' Committee") negotiated a settlement with the Debtors and their Senior Lenders[3] that formed the basis for the Plan, including creation of the Trust. (App. 3 at 48-49.) Unsecured creditors were

---

[3]    Capitalized terms not defined herein have the meanings ascribed to them in the Plan. (*See* App. 4.)

to receive cash or notes and the right to pursue the Assigned Causes of Action against Appellant, among others, in exchange for a release of potential causes of action against the Senior Lenders, among others. (*Id.*; *see* App. 4 at §§ 3.10(c), 4.21.) The Creditors' Committee received the right to appoint a trustee to pursue the Assigned Causes of Action; Mr. Kipperman, the appellee herein, was so appointed in November 2003. (App. 4 at § 4.21(a).)

**C.    The Debtors "Crammed Down" the Plan On Appellant Pursuant to Section 1129(b) of the Bankruptcy Code.**

Section 1129(b) of the Bankruptcy Code – the so-called "cram down" provision – allows a debtor to seek confirmation of a plan of reorganization over the objection of a class of creditors or interest holders. To obtain such relief, the debtor must guarantee to the satisfaction of the Bankruptcy Court certain protections to the crammed down class including that no class senior in priority to such class may receive more than a 100% recovery on its claims or interests. It is this fundamental cram down rule, which it is this court's obligation to enforce, the Trustee has violated and continues to violate.

The Plan sought to "cram down" Appellant's interests, *i.e.*, the equity interests it received in exchange for more than $100 million of contributed capital.[4] Consequently, the Debtors had to prove that the Plan satisfied section 1129(b) of the Bankruptcy Code, the absolute priority rule, with respect to Appellant. And that rule provides that creditors may not recover more than they are owed if shareholder interests are to be wiped out. *See In re Exide Techs.*, 303

---

[4]    In May 1999, Appellant made a capital contribution of $51.8 million to fund partially the acquisition of American Buildings Company, in return for which Appellant received stock in ABCO Holdings Corporation (later known as Magnatrax). Appellant made an additional capital contribution of $6.9 million in September 1999 to fund partially ABCO's acquisition of Republic Builders Products Company, and an additional capital contribution of $49.2 million in March 2000 to fund partially the acquisition of Jannock Limited. Finally, Onex Corporation (the sole member of Appellant) made a capital contribution of $9.4 million to Magnatrax in November 2002. The total of these capital contributions, $117.3 million, remains unpaid.

B.R. 48, 61 (Bankr. D. Del. 2003); *In re Health Ventures, Inc.*, 266 B.R. 591, 612 (Bankr. D. Del. 2001).

The Plan divided the Debtors' creditors and equity holders into 15 classes. Two are relevant here: (i) Class 9, General Unsecured Claims, and (ii) Class 15, Magnatrax Equity Interests held by, among others, Appellant. (App. 4 at §§ 3.10, 3.16.) Class 15 was deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code because it received no distribution whatsoever under the Plan (*see* App. 4 at § 3.16).[5] Consequently, the Debtors could not satisfy section 1129(a)(8) of the Bankruptcy Code,[6] and had to resort to "cram down" as the only route to confirmation.

The Debtors clearly stated as much in their Disclosure Statement: "With respect to those Classes of Claims and Equity Interests that are deemed to have rejected the Plan, *i.e.*, Classes 10, 11, 12, 13 and 15, the Magnatrax Debtors intend to request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code." (App. 3 at 4; *see also id.* at 52, 114

---

[5]  Section 1126(g) of the Bankruptcy Code provides:

> Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests.

11 U.S.C. § 1126(g).

[6]  Section 1129(a)(8) of the Bankruptcy Code provides that a court shall confirm a plan only if, among other things:

> With respect to each class of claims or interests –

> (A) such class has accepted the plan; or

> (B) such class is not impaired under the plan.

11 U.S.C. § 1129(a)(8). Because Class 15 was impaired under the Plan and deemed to reject it, the Debtors could not satisfy this requirement.

(noting the Debtors' intent to seek confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code).)

The Creditors' Committee fully supported the Plan and negotiated the terms of the Trust. (*See id.* at 48-49.) At the Creditors' Committee's request, the Debtors' Disclosure Statement included a description of the Trust and the Assigned Causes of Action to be transferred to it. The Creditors' Committee also affirmatively represented in the Disclosure Statement that the amount of the potential recovery by the Trust, if any, was in the range of $8 to $24 million. (*See id.* at 97-99.) It reiterated this representation in a letter (the "Committee Letter") dated September 8, 2003, which each holder of a Class 9 Claim received with its ballot to vote on the Plan. (*See* App. 5 at 4.) The Committee Letter encouraged General Unsecured Creditors to vote in favor of the Plan and opt into the Trust.

On November 12, 2003, the Debtors filed their Memorandum of Law of Magnatrax Corporation and Its Subsidiaries (a) in Support of Confirmation of the Plan and (b) in Response to Objections thereto (the "Memorandum of Law"). (App. 6.) As represented in their Plan and Disclosure Statement, the Debtors sought Plan confirmation under the cramdown provisions of section 1129(b). (*See* App. 6 at 18-19, 24-29.) The Debtors made the required assertion that the Plan was "fair and equitable" with respect to the Class 15 Magnatrax Equity Interests, among other reasons, because "no Class senior to Class[ ] . . . 15 can receive more than 100% recovery on their Allowed Claims." (*Id.* 6 at 29.) Joseph M. Ahearn, who served as the Debtors' chief restructuring officer, submitted an affidavit (the "Ahearn Affidavit") (App. 7) in further support of confirmation noting, among other terms, the Plan's satisfaction of section 1129(b): "the Plan is . . . confirmable because the cram down provisions of section 1129(b) of the Bankruptcy Code have been satisfied with respect to [Class 15]." (*Id.* at 17-18.) Thus, the

Debtors specifically represented to the court and parties in interest, including Appellant, that no

class of claims or interests senior to Class 15 would receive greater than a 100% recovery as

required by section 1129(b) of the Bankruptcy Code.  (App. 6 at 29.)

Indeed, the Confirmation Order specifically finds that the Plan satisfies section

1129(b):

> The Magnatrax Debtors presented *uncontroverted evidence* at the
> Confirmation Hearing, and the Bankruptcy Court hereby finds, that
> the Plan does not discriminate unfairly, and is fair and equitable,
> with respect to each of the Rejecting Classes [including the
> Magnatrax Equity Interests], as required by Section 1129(b)(1) of
> the Bankruptcy Code . . . .

(App. 2 at 14 (emphasis added).)  No party in interest, including any Class 9 creditor or the

Creditors' Committee itself, contested the Plan's compliance with section 1129(b) and the

resulting cap on creditors' recoveries provided thereby.

**D.     Creditors Holding Only Approximately**
**$12 Million in Claims Opt Into the Trust.**

General unsecured creditors received an aggregate recovery of $5 million under

the Plan:  8.8% of their $56.6 million in claims.[7]  (App. 3 at 14-15.)  Specifically, the Plan

provides for such creditors to receive an initial cash distribution of their share of $300,000 and a

subsequent distribution of cash or notes in respect of their share of the remaining $4.7 million.

(*Id.*)

The Plan also provides for the establishment of the Trust.  (App. 4 at § 4.21.)

Section 4.21 of the Plan transfers to the Trust certain of the Debtors' potential causes of action:

> On the Effective Date, the Reorganized Magnatrax Debtors will
> transfer and assign, or cause to be transferred and assigned, to the

---

[7]     The $56.6 million amount does not take into account objections filed by the Debtors that
decreased the ultimate amount of allowed unsecured claims.

> Litigation Trust, all their right, title and interest in and to the
> Assigned Causes of Action . . . .

(*Id.*)

To fund the Trust, each unsecured creditor elected on a ballot whether to accept or

reject the Plan and whether to contribute to the Trust such creditor's initial cash distribution and

60.6% of the cash distribution which such creditor would receive on the first anniversary of the

Plan's effective date. (App. 4 at §§ 3.10.c, 4.21; App. 3 at 15.) If a creditor elected to opt into

the Trust, such creditor became a Trust beneficiary entitled to receive a pro rata share of the

Trustee's recovery, if any. (App. 4 at § 4.21.)

Class 9 creditors holding only approximately $12 million in Allowed Claims

opted into the Trust. (App. 8 at 4.) As the Litigation Trust Agreement makes clear, the Trust is

only for "the benefit of the holders of Allowed Claims in Class 9 who elect[ed] to contribute to,

and therefore [became] beneficiaries of, the Litigation Trust pursuant to Section 3.10.c of the

Plan." (App. 9 at Recitals.) Creditors who did not make such election have no interest in or

entitlement from the Trust. (*See* App. 4 at § 3.10.c.) Indeed, their claims were fully discharged

under the Confirmation Order. (*See* App. 2 at 34-35.)

The Litigation Trust agreement states that "[t]he Bankruptcy Court shall enforce

and administer the provisions of this Litigation Trust Agreement as set forth in the Plan." (App.

9 at § 14.18.) In other words, the Trust is governed by the terms of the Plan, which in turn is

governed by the Confirmation Order. (App. 2 at 42.)

**E.      The Plan is Substantially Consummated and the Debtors' Cases Are Closed.**

The Confirmation Order was entered on or about November 17, 2003. (App. 2 at

45.) On January 20, 2004 the Plan became effective and deemed substantially consummated.

(App. 4 at § 11.1; Motion of Reorganized Debtor for Final Decree Closing the Reorganized

Debtor's Chapter 11 Case Pursuant to Bankruptcy Code Section 350 and Bankruptcy Rule 3022 and Granting Related Relief (the "Final Decree Motion") (App. 10 at 2).)

On October 20, 2006, Magnatrax moved to close its chapter 11 case.[8] (*See id.* at 2.) On November 8, 2006, the Bankruptcy Court granted the Final Decree Motion. (App. 12.)

## F.    The Trustee Files a $600 Million Complaint in Georgia Funded by IML.

On March 28, 2005, the Trustee filed a motion seeking the Bankruptcy Court's approval of a litigation "funding agreement" with IML. (*See* App. 8.) Pursuant to this agreement, IML pays "all legal fees and costs" incurred by the Trustee's counsel. (*Id.* at 7.) In return, IML will receive repayment of all such costs in addition to 50% of any recovery by the Trustee. (*Id.* at 7.) In his motion, the Trustee asserted that creditors holding approximately $12 million in claims opted into the Trust. (*Id.* at 4.) Nowhere did he reveal his scheme to bring an action seeking 50 times that amount, and thereby abuse the bankruptcy process. (*See id.* at 4). Indeed, the only reasonable interpretation of the representations made by the Trustee in connection with in his motion to approve the funding agreement was that the action sought to be prosecuted was to satisfy the $12 million opt-in claims.

On May 10, 2005, the Trustee brought an action against, among others, Appellant in the Georgia District Court (Case No. 105 CV 1242 (N.D. Ga.)) (the "Georgia Action") seeking in excess of $600 million in damages. On August 1, 2005, Appellant and its co-defendants moved to dismiss the Georgia Action on various grounds, including lack of subject matter and personal jurisdiction, all of which defenses are expressly preserved here.[9] Although

---

[8]    Pursuant to an order dated June 23, 2006, the chapter 11 cases of all of the Debtors except Magnatrax were closed. (App. 12.)

[9]    Appellant and each of the other Onex-related defendants expressly preserve all of their arguments as to the Trustee's ability to obtain *any* relief in the Georgia Action, irrespective of the Court's decision on this Appeal.

Appellant raised certain issues concerning the Trustee's standing, Appellant did not seek from the Georgia District Court the relief sought here – enforcement of the Plan's cram down provisions.

On September 15, 2006, the Georgia District Court entered an Order and Opinion granting defendants' motion in part and denying it in part. While the Georgia District Court noted that Appellant, among others, had contested the Trustee's ability to recover in excess of $600 million on behalf of creditors holding approximately $12 million in claims, the Georgia District Court "decline[d] to narrow the case on the issue of recovery at this time." (App. 13 at 15.) Rather, the Court found that "[w]hether, under bankruptcy principles, a plaintiff representing a class of unsecured creditors has or does not have the right to recover more than the amount of actual damages of those unsecured creditors is an issue that is better determined after liability issues." (*Id.* at 15.) As stated above, enforcement of the Plan and a determination of the *Appellant's rights*, as contrasted with "*the right … of those unsecured creditors,* " was not before the Georgia District Court. (*Id.*)

## G.     The Bankruptcy Court Order

On March 12, 2007, Appellant filed its motion for an order enforcing the Plan (the "Motion to Enforce"). (App. 14.) The Motion to Enforce seeks an order enforcing the cram down terms of the Plan against the Trustee. Specifically, it requests an order enforcing Appellant's rights under the absolute priority rule, which limits creditor recoveries to payment in full. (*See id.*)

In conjunction with its Motion to Enforce, Appellant filed its Motion to Reopen, which the Bankruptcy Court denied on April 16, 2007. While recognizing Appellant's argument that the Plan "violation consists of [the Trustee] seeking $600 million or an amount in excess of the Trust beneficiaries' claims," the Bankruptcy Court erroneously opined that "the serious

11

issues [Appellant] has raised may never be ripe for decision because the Trust must first obtain a judgment in an amount [Appellant] believes would violate the Plan." (Bankruptcy Court Order at 3.) Further, the Bankruptcy Court opined that because Appellant "already raised the ability of the Trust to seek an amount in excess of the dollar amount of the Trust beneficiaries' claims with the [Georgia] District Court . . . [i]t is inappropriate for the Court to interfere with the [Georgia] District Court's disposition of the Litigation." (*Id.* at 3.) Thus, the Bankruptcy Court held "that the issues [Appellant] raises [in the Motion to Enforce] are not ripe for adjudication" and that a decision on such "would constitute an ill-advised advisory opinion and would interfere with the jurisdiction of the [Georgia] District Court in violation of the principle of comity and contrary to the best interests of justice." (*Id.* at 3 (citation omitted).)

On April 26, 2007, Appellant timely filed its Notice of Appeal. (D.I. 1.)

## ARGUMENT

The Bankruptcy Court Order should be reversed because it is based on three errors of law. *See Montrose*, 243 F.3d at 777-78. *First*, the Motion to Reopen is ripe for adjudication because the Trustee's complaint in the Georgia Action and his prosecution of that action violates the Confirmation Order and the Appellant's rights thereunder by seeking a recovery 50 times greater than that permitted thereby. *Second*, the Bankruptcy Court should have reopened the chapter 11 case to estop the Trustee from continuing to play "fast and loose" to Appellant's disadvantage. *Krystal Cadillac-Oldsmobile GMC Truck, Inc.* v. *General Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (quoting *Scarano* v. *Central R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953)). *Third*, proceeding before the Bankruptcy Court to enforce the Plan and the Confirmation Order would not interfere with adjudication of the Georgia Action which is being actively litigated by the parties and will presumably continue to be so. Rather, the $600 million Complaint should never have proceeded in the first place and, in any event, the

12

Bankruptcy Court is best suited to interpret its own Confirmation Order. Accordingly, this Court should reverse the order on appeal.[10]

A.    **The Issues Raised by Appellant are Ripe Because They Present a Controversy Between Adverse Parties Based On Fully Developed Facts and Appellant Has Suffered Actual Harm.**

In the Third Circuit, "[a] federal court's jurisdiction . . . can be invoked only when the plaintiff himself has suffered 'some threatened or *actual injury* resulting from the putatively illegal action . . . .'" *Presbytery of N.J.* v. *Florio*, 40 F.3d 1454, 1463 (3d Cir. 1994) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)) (emphasis added). Ripeness requires a three-part showing: "the parties [must be in] in a sufficiently adversarial posture to be able to present their positions vigorously, . . . the facts of the case [must be] sufficiently developed to provide the court with enough information on which to decide the matter conclusively, and . . . a party [must

---

[10]    The Bankruptcy Court expressed concern regarding the standing of Appellant to bring the Motion to Reopen because Appellant was dissolved on or about December 4, 2002. (*See* Motion to Reopen Hr'g Tr. 34, Apr. 13, 2007.) The Bankruptcy Court's concern is unwarranted. Pursuant to Appellant's Plan of Complete Liquidation and Dissolution, all of Appellant's property and assets were distributed to its sole shareholder, Onex Corporation. (App. 15.) Bankruptcy Rule 7025(c) provides, in relevant part, that upon a "transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." Thus, Onex Corporation, a co-defendant in the Georgia District Court, could pursue the Motion to Reopen and the Motion to Enforce in place of Appellant, if necessary. *See Olympic Coast Inv., Inc.* v. *Seipel*, No. 05-36170, 2006 WL 3431874 (9th Cir. Nov. 29, 2006) (claims brought by a non-existent entity may nonetheless be maintained by another party that had the right to bring such claims). Alternatively, Appellant could seek appointment of a trustee to prosecute the Motion to Reopen pursuant to 6 Del. C. § 18-805. These steps are unnecessary, though, because the Bankruptcy Court's concern elevates form over substance: Onex Corporation could just as easily file the Motion to Reopen. However, requiring it to do so would waste judicial resources and cause the parties additional, unnecessary expense. Courts are authorized to avoid such inefficiencies. *See Maloney* v. *Gordon*, 328 F.Supp.2d 508, 511 (D. Del. 2004) (every court has the inherent power "'to control the disposition of the causes of action on its docket [to maximize] the economy of time and effort for itself, for counsel, and for litigants'") (quoting *Landis* v. *North Am. Co.*, 299 U.S. 248, 254-55 (1936)). In any event, because the only issue before this Court is ripeness of the Motion to Reopen, the Court need not address the Bankruptcy Court's concern here.

be] genuinely aggrieved so as to avoid expenditure of judicial resources on matters which have caused harm to no one." *Peachlum* v. *City of York*, 333 F.3d 429, 433-34 (3d Cir. 2003) (citing Erwin Chemerinsky, Federal Jurisdiction § 2.3.1 (1989)). Each of these requirements is satisfied here. [11]

### 1.    The Parties Are Sufficiently Adverse.

Parties are in a sufficiently adversarial position where one party has already acted to violate the rights of another, and will likely continue to do so. *See NE Hub Partners, L.P.* v. *CNG Transmission Corp.*, 239 F.3d 333, 343 (3d Cir. 2001) (finding sufficient adversity where permit review process constituted alleged harm and there was "little doubt that [the plaintiff would] continue with the permit review process"); *Travelers Ins. Co.* v. *Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995) ("[p]arties' interests are adverse where harm will result if the declaratory judgment is not entered").

Here, it is indisputable that the parties are adverse:  the Trustee currently is pursuing a recovery in the Georgia Action in an amount prohibited by the Plan in violation of the Confirmation Order and section 1129(b) of the Bankruptcy Code.  Further, the Trustee has given no indication that he will amend his Complaint to remedy his improper actions.  Thus, the adversity of the parties is sufficient to justify adjudication. *See NE Hub Partners, L.P.*, 239 F.3d at 343; *Travelers Ins. Co.*, 72 F.3d at 1154.

---

[11]    Indeed, bankruptcy courts regularly reopen cases to adjudicate violations of a confirmed plan. *See In re Venuto*, 343 B.R. 120, 125 (Bankr. E.D. Pa. 2006) (granting motion to reopen case to consider alleged violation of discharge order); *In re Dynamic Tours & Transp., Inc.*, 359 B.R. 336, 340 (Bankr. M.D. Fla. 2006) (noting that bankruptcy court had reopened case to determine whether creditor violated discharge order); *U.S. Home Corp.* v. *Los Prados Cmty. Assoc., Inc.* (*In re U.S.H. Corp. of N.Y.*), 280 B.R. 330, 332 (Bankr. S.D.N.Y. 2002) (same).

### 2.    The Instant Dispute Turns on a
### Question of Law, Not Disputed Facts.

Facts are sufficiently developed to permit adjudication of a motion where no

factual disputes exist or the question is predominantly legal. *See NE Hub Partners*, 239 F.3d at

344 (facts sufficiently developed in action to declare state regulatory process preempted because

question is purely legal); *Presbytery of N.J.*, 40 F.3d at 1468 (factual development would add

little to facial challenge to constitutionality of statute); *Travelers Ins. Co. v. Obusek*, 72 F.3d at

1155 (complaint raised purely legal question).

Here, the issue raised by Appellant presents a pure question of law: whether the

Complaint violates Appellant's rights by seeking a recovery in excess of that allowed by the

Plan, the Confirmation Order and section 1129 of the Bankruptcy Code. No factual

controversies exist; therefore, Appellant's motion below is ripe for adjudication.

### 3.    The Trustee Has Violated and
### Continues to Violate Appellant's Rights.

In exchange for extinguishing Appellant's shareholder interests, the Plan (as it

must) guarantees that no creditor will receive more than a 100% recovery. Simply put, in a

cramdown scenario no party in interest may recover more than it is owed at the expense of those

whose investments will be wiped out. Any attempt to collect more than 100% is similar to an

attempt to collect a claim expunged by the debtor's bankruptcy discharge, which is clearly

prohibited. Nonetheless, the Trustee has pursued such an action in the Georgia District Court at

an enormous cost to Appellant, among others. Discovery in the Georgia Action has been

proceeding since January 2007. Well over one million pages of documents have been produced

and, while several depositions have been taken, the Georgia District Court has authorized 50

depositions to be taken. The Trustee has already sought two extensions of the discovery deadline

and has continued to delay resolution of the case. Under the current schedule, fact discovery is

15

scheduled to close on December 15, 2007, with expert discovery until March 7, 2008, and

summary judgment motions to be filed by April 7, 2008. To the extent the Trustee seeks again to

extend the schedule, as he has done every time when faced with a deadline, the tremendous

expense and burden of the Georgia Action will only be increased. The Trustee should not be

permitted to argue that pursuing resolution of the dispute before this court will prejudice him

while he delays resolution of the Georgia Action. Accordingly, the Trustee's flagrant disregard

of the Plan, the Confirmation Order and fundamental bankruptcy law violates Appellant's rights

and, therefore, should be redressed now.

Courts have recognized that an attempt to collect an amount prohibited by a

confirmed plan presents justiciable issues. *See In re Dynamic Tours & Transp., Inc.*, 359 B.R.

336, 341 (Bankr. M.D. Fla. 2006) (describing complaint filed by creditor in district court, which

sought to collect a debt discharged by the confirmed plan, as showing an "arrogant defiance of

bankruptcy law . . . not made in good faith"; imposing sanctions on creditor); *McDonald* v. *Bank*

*Fin. (In re McDonald)*, 336 B.R. 380, 386 (Bankr. N.D. Ill. 2006) (holding lender's scheduling

of sheriff's sale in an attempt to foreclose on mortgage based upon pre-bankruptcy arrearage

violated confirmation order); *In re Kindred Healthcare, Inc.*, Nos. 99-3199 and 99-3327, 2003

WL 22000598, at * 2-3 (Bankr. D. Del. Aug. 18, 2003) (adjudicating motion to enforce plan to

determine whether plaintiff's request for punitive damages violated plan's terms); *In re U.S.H.*

*Corp. of N.Y.*, 280 B.R. at 339 (denying motion to dismiss debtor's complaint seeking finding

that prosecution of pre-confirmation claims in state court violates Bankruptcy Code and

discharge provisions of confirmed plan of reorganization). Thus, the mere attempt of a creditor

bound by a confirmed plan of reorganization to collect more than what is permitted by such plan

presents a justiciable controversy.

Here, the Trustee seeks an amount – more than 50 times the Trust beneficiaries' Allowed Claims – that the Plan, the Confirmation Order and section 1129(b) of the Bankruptcy Code prohibit the Trust beneficiaries from collecting. Courts interpreting section 1129(b) have uniformly ruled that "a dissenting class should be assured that no senior class receives more than 100 percent of the amount of its claims." *In re MCorp Fin., Inc.*, 137 B.R. 219, 235 (Bankr. S.D. Tex. 1992); *see, e.g., United Sav. Ass'n of Tex.* v. *Timbers of Inwood Forest Assocs.* (*In re Timbers of Inwood Forest Assocs.*), 793 F.2d 1380, 1410 (5th Cir. 1986) ("'[n]o class may be paid more than in full'") (*quoting* H.R. Rep. No. 595, 95th Cong., 2d Sess. 415, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5963, 6312), *aff'd*, 808 F.2d 363 (5th Cir. 1987) (en banc), *aff'd*, 484 U.S. 365 (1988); *In re Trans Max Techs., Inc.*, 349 B.R. 80, 89 (Bankr. D. Nev. 2006) ("[o]ne component of fair and equitable treatment is that a plan may not pay a premium to a senior class;" noting that a valuation of the debtor would be required in almost every cram down situation to "ensure[] that no class surviving confirmation will be paid more than in full through the capture of value that rightly belongs to the eliminated class"); *Exide Techs.*, 303 B.R. at 61 ("'a corollary of the absolute priority rule is that a senior class cannot receive more than full compensation for its claims'") (*quoting MCorp*, 137 B.R. at 225); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 612 (Bankr. D. Del. 2001) (same); *In re P.J. Keating Co.*, 168 B.R. 464, 469 (Bankr. D. Mass. 1994) ("[a]n uncodified aspect of the fair and equitable rule governing the cram down of interests is that no class of creditors be paid more than in full") (*citing* H.R. Rep. No. 95-595, 95th Cong., 1st Sess., at 414 (1977)); *In re Future Energy Corp.*, 83 B.R. 470, 495 n.39 (Bankr. S.D. Ohio 1988) ("[c]learly, overpayment of senior creditors is violative of the fair and equitable standard"); *In re Swiftco, Inc.*, No. 85-07083-H1-5, 1988 WL 143714, at *12 (Bankr. S.D. Tex. Oct. 5, 1988) ("[o]verpayment of a secured creditor in a cram down situation

is not permitted") (citing *In re Sandy Ridge Dev. Corp.*, 77 B.R. 69, 74 (Bankr. M.D. La. 1987).

The Trustee does not dispute this absolute limit on the Trust beneficiaries' recovery. Nor can he:

permitting a senior creditor to attempt to recover more than 100% of its claims in a cramdown

scenario violates the absolute priority rule.

It is beyond dispute that the Plan was intended to satisfy, and did satisfy, the

absolute priority rule. The Debtors expressly advertised their intent to pursue a cramdown

confirmation in the Disclosure Statement. (*See* App. 3 at 4, 52, 114; App. 4 at § 4.2.) In their

Memorandum of Law, the Debtors stated that "no Class senior to Class[ ] . . . 15 can receive

more than 100% recovery on their Allowed Claims." (App. 6 at 29.) Similarly, the Ahearn

Affidavit states that "the Plan is . . . confirmable because the cram down provisions of section

1129(b) of the Bankruptcy Code have been satisfied with respect to [Class 15]." (App. 7 at 18.)

Accordingly, this Court's Confirmation Order found that the "Magnatrax Debtors presented

uncontroverted evidence at the Confirmation Hearing, and the Bankruptcy Court hereby finds,

that the Plan . . . is fair and equitable . . . with respect to each of the Rejecting Classes [including

Class 15]." (App. 2 at 14 (emphasis added).) To permit the Trustee to continue to subvert these

representations and rulings would be a travesty.

The Trustee's attempt to collect more than he is entitled to constitutes a present

violation of the Plan, the Confirmation Order and the Bankruptcy Code. Further, it violates a

fundamental bankruptcy principle: bankruptcy promotes equal and equitable treatment of

creditors, not recovery of a jackpot at the expense of wiped out shareholders. *See Howard*

*Delivery Serv., Inc.* v. *Zurich Am. Ins. Co.*, 126 S. Ct. 2105, 2116 (2006) (court based holding in

part on "the equal distribution objective underlying the Bankruptcy Code"). Therefore, the

Bankruptcy Court should have reopened the chapter 11 case to permit Appellant an opportunity

18

to vindicate its rights. *See In re Dynamic Tours & Transp., Inc.*, 359 B.R. at 341; *In re McDonald*, 336 B.R. at 386; *In re Kindred Healthcare, Inc.*, Nos. 99-3199 and 99-3327, 2003 WL 22000598, at * 2-3.

**B.    The Bankruptcy Court Should Have Remedied
the Trustee's Abuse of the Judicial Process.**

The Third Circuit has repeatedly "recognized the intrinsic ability of courts" to apply judicial estoppel when "necessary to prevent a litigant from 'playing fast and loose with the courts.'" *Krystal Cadillac-Oldsmobile GMC Truck, Inc.*, 337 F.3d at 319 (quoting *Scarano*, 203 F.2d at 513). "The basic principle of judicial estoppel . . . is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996) ((quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 (1981)). Indeed, judicial estoppel requires that the estopped party's "'intentional self contradiction is . . . used as a means of obtaining unfair advantage.'" *Ryan Operations*, 81 F.3d at 362 (quoting *Scarano*, 203 F.2d at 513 (3d Cir. 1953)). Because judicial estoppel prevents a party from manipulating the courts to their unfair advantage, a court has inherent authority to raise it *sua sponte* as necessary. *Id.* at 325 (affirming lower court's raising of judicial estoppel *sua sponte*); *Fleck* v. *KDI Sylvan Pools, Inc.*, 981 F.2d 107, 121-22 (3d Cir. 1992) (recognizing that trial court may raise the issue of judicial estoppel *sua sponte*); *In re Cassidy*, 892 F.2d 637, 641–642 (7th Cir.), *cert. denied*, 498 U.S. 812 (1990) ("a court, even an appellate court, may raise the estoppel on its own motion . . . ").

The representations affirmatively made to the Bankruptcy Court - that the amount of the potential recovery by the Trust, if any, was in the range of $8 to $24 million and that the

19

Plan satisfied the cramdown provisions of the Bankruptcy Code (*see* App. 3 at 97-99.) – versus those made to the Georgia District Court – that the Trustee is entitled to a $600 million recovery – are the exact sort of double-talk that judicial estoppel prohibits. The Trustee's Complaint cannot be reconciled with the affirmative representations made by the Debtors and the Creditors' Committee to the Bankruptcy Court and parties in the chapter 11 case. By means of these inconsistent positions, the Trustee seeks to gain significant advantage at Appellant's expense – a recovery 50 times the amount permitted and far beyond the recovery range represented to creditors and the Bankruptcy Court. Such irreconcilable positions epitomize the "fast and loose" manipulation of the courts that the Third Circuit and the Delaware Bankruptcy Court have repeatedly recognized must be estopped, particularly where a litigation trustee seeks to contradict the debtor's and general unsecured creditors' committee's pre-confirmation statements. *See Forklift LP Corp.* v. *iS3C, Inc.* (*In re Forklift LP Corp.*), 363 B.R. 388, 396-97 (Bankr. D. Del. 2007) (litigation trust estopped from asserting plan interpretation violating the Bankruptcy Code and contrary to the Debtor's representations to the bankruptcy court: "The Debtors' assertion that the Plan conforms with §1129(a)(9)(A) allowed the Debtors to get the Plan confirmed. [The litigation trust] cannot now change the argument to its own advantage to avoid paying Defendant in full.") Accordingly, the Bankruptcy Court should have reopened the chapter 11 case to estop the Trustee's improper actions.

C.    **The Bankruptcy Court's Decision Would
        Not Interfere with the Georgia Action.**

        The Bankruptcy Court's interpretation of its own Plan and Confirmation Order would not violate principles of comity or the best interests of justice. To the contrary, the Trustee's seeking $600 million in the Georgia District Court violates the Bankruptcy Court's Confirmation Order. The Complaint in its current, over-inflated form should not have been

allowed to proceed because, on its face, it conflicts with that Order. The Trustee has wasted, and continues to waste, judicial resources pursuing a recovery explicitly prohibited by the Plan. Such conduct is inconsistent with the best interests of comity and justice.

Moreover, it is indisputable that the Bankruptcy Court is in the best position to interpret its own Confirmation Order. *See Casse* v. *Key Nat'l Bank Ass'n (In re Casse)*, 198 F.3d 327, 333 (2d Cir. 1999) ("[t]he bankruptcy court [is] in the best position to interpret its own orders") (internal quotation marks omitted); *In re Weber*, 25 F.3d 413, 416 (7th Cir. 1994) (bankruptcy court's interpretation of own confirmation order entitled to deference); *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d 1184, 1194 (7th Cir. 1993) ("the reorganization court is clearly in the best position . . . to interpret the consummation order . . . ."); *Texas N.W. Ry. Co.* v. *Atchison, Topeka & Santa Fe Ry. Co. (In re Chicago, Rock Island & Pac. R.R. Co.)*, 860 F.2d 267, 272 (7th Cir. 1988) (the bankruptcy court is "in the best position to interpret its own orders"); *Jamaica Shipping Co., Ltd.* v. *Orient Shipping Rotterdam, B.V. (In re Millennium Seacariers)*, 354 B.R. 674, 679 (Bankr. S.D.N.Y. 2006) (holding that bankruptcy court, and not a foreign arbitration panel, is the best forum to interpret bankruptcy court's sale order as well as interpret issues of bankruptcy practice and bankruptcy law relating to executory contracts); *In re U.S.H. Corp. of N.Y.*, 280 B.R. at 335 ("it is well settled that the 'bankruptcy court is undoubtedly the best qualified to interpret and enforce its own orders including those providing for discharge and injunction'") (citing *Texaco Inc.* v. *Sanders (In re Texaco, Inc.)*, 182 B.R. 937, 947 (Bankr. S.D.N.Y. 1995)).

The relief sought by Appellant would not interfere with the jurisdiction of the Georgia District Court. To the contrary, Appellant merely requests that the Bankruptcy Court enforce its own order, which lies squarely within its authority. *See In re Zinchiak*, 406 F.3d 214,

225 (3d Cir. 2005) (affirming bankruptcy court's decision to reopen case to hear mortgagee's deficiency petition notwithstanding that several related actions were pending in Pennsylvania state courts); *In re Dynamic Tours & Transp.*, 359 B.R. at 342 (noting that bankruptcy court previously held that creditor's attempt to collect discharged claim in district court action violated bankruptcy court's discharge order); *In re U.S.H. Corp. of N.Y.*, 280 B.R. at 335 (bankruptcy court would decide as a matter of law whether state court cause of action violated discharge provisions of confirmation order). Thus, this Court should reverse the Bankruptcy Court Order and direct the Bankruptcy Court to consider Appellant's Motion to Enforce.

## CONCLUSION

For the foregoing reasons, this Court should reverse the Bankruptcy Court Order and grant such other relief as may be proper.

Dated:   October 17, 2007

COZEN O'CONNOR

Mark E. Felger (No. 3919)
Jeffrey R. Waxman (No. 4159)
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000

-and-

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
Alan W. Kornberg
Maria T. Vullo
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000

Counsel to Appellant,
Onex American Holdings, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) |
| ONEX AMERICAN HOLDINGS, LLC, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) Civil Action No. 07-cv-263-UNA |
| | ) |
| RICHARD M. KIPPERMAN, | ) |
| | ) |
| Appellee. | ) |
| | ) |
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| MAGNATRAX CORPORATION, | ) Case No. 03-11402 (KG) |
| | ) |
| Reorganized Debtor. | ) |
| | ) |

### CERTIFICATE OF SERVICE

I, Jeffrey R. Waxman, certify that I am not less than 18 years of age, and that service of the *Opening Brief of Appellant Onex American Holdings, LLC* was made on October 17, 2007 upon the parties listed below in the manner indicated.

### HAND DELIVERY

Richard L. Schepacarter, Esquire
Office of the United States Trustee
844 North King Street, Suite 2207
Wilmington, DE 19801

Christopher P. Simon, Esquire
Cross & Simon, LLC
913 N. Market Street, 11th Floor
Wilmington, DE 19801

Joel A. Waite, Esquire
Matthew Lunn, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801

**FIRST CLASS MAIL**

Peter W. Ito, Esquire
Baker & Hostetler LLP
303 E. 17th Avenue, Suite 1100
Denver, CO 80203

Andrew Kress, Esquire
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022

Catherine L. Steege, Esquire
Joel T. Pelz, Esquire
Peter A. Siddiqui, Esquire
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611

Under penalty of perjury, I declare that the foregoing is true and correct.

Dated:  October 17, 2007

COZEN O'CONNOR

Jeffrey R. Waxman (No. 4159)