**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ONEX AMERICAN HOLDINGS, LLC, ) | |
| ) | |
| Appellant, ) | Civil Action No. 07-CV-263 (SLR) |
| ) | |
| v. ) | |
| ) | |
| RICHARD M. KIPPERMAN, as Trustee of ) | |
| the MAGNATRAX LITIGATION TRUST ) | |
| ) | |
| Appellee. ) | |
| ) | |
| In re: ) | Chapter 11 |
| ) | |
| MAGNATRAX CORPORATION, ) | Case No. 03-11402 (KG) |
| ) | |
| Reorganized Debtor. ) | |

**BRIEF OF APPELLEE RICHARD M KIPPERMAN**

Christopher P. Simon (No. 3697)     Catherine L. Steege          Peter W. Ito
CROSS & SIMON LLC                   Joel T. Pelz                 BAKER & HOSTETLER LLP
913 North Market Street,            Andrew S. Nicoll             303 East 17th Avenue,
11th Floor                          JENNER & BLOCK LLP           Suite 1100
P.O. Box 1380                       330 N. Wabash Avenue         Denver, CO 80203
Wilmington, DE 19899-1380           Chicago, IL 60611            Tel.: (303) 861-0600
Tel.: (302) 777-4200                Tel.: (312) 222-9350

*Counsel for Richard M Kipperman, Trustee of the Magnatrax Litigation Trust*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES.......................................................................... iii

STATEMENT OF THE CASE ........................................................................1

JURISDICTIONAL STATEMENT ................................................................2

STATEMENT OF FACTS ..............................................................................3

STANDARD OF REVIEW..............................................................................9

ARGUMENT...................................................................................................9

    I.     The Appeal Should Be Dismissed For Lack Of Jurisdiction. ................9

          A.     Onex American Lacks Standing To Bring This Appeal Because It Is Not A Legal Entity. .........................................................10

          B.     Onex American Lacks Standing Because It Has No Pecuniary Interest In This Appeal And Its Purported Injury Will Not Be Redressed By A Favorable Decision. .....................................11

    II.    The Bankruptcy Court Did Not Abuse Its Discretion When It Refused To Re-Open The Debtors' Chapter 11 Cases. ...........................................14

          A.     Legal Standards To Reopen A Bankruptcy Case. ....................14

          B.     The Bankruptcy Court Correctly Held That Onex American's Motion Was  Not Ripe For Adjudication As It Is Contingent Upon A Substantial Recovery In The District Court Action. ...................15

          C.     The Bankruptcy Court Correctly Rejected Onex American's Theory That The Trustee, By Merely Pleading Its Claims In The District Court Action In An Amount Exceeding The Trust Beneficiaries' Former Claims, Violated The Plan Or Confirmation Order As Neither The Plan Nor Confirmation Order Contains Such An Injunction. ..........................................17

          D.     The Bankruptcy Court Correctly Rejected Onex American's Theory That The Trustee's Actions Were Barred By Judicial Estoppel. .................................................................................20

          E.     The Bankruptcy Court Did Not Abuse Its Discretion When It Considered The Availability Of Relief In The District Court And The Effect Reopening The Case Would Have On The District Court Action. ..........................................................23

III.    Onex American Has Failed To Show That A Recovery Exceeding The Amount Of The Trust Beneficiaries' Claims Would Violate Onex American's Rights. .................................................................27

    A.    Onex American Waived Any Challenge To The Unambiguous And Uncapped Assignment Of The Assigned Causes Of Action. ...........................................................................27

    B.    Onex American Has Failed To Establish That The Absolute Priority Rule Was Violated...................................................29

CONCLUSION..........................................................................................34

## TABLE OF AUTHORITIES

### CASES

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967)...........................................................................16

*Binker v. Com. of Pa.*, 977 F.2d 738 (3d Cir. 1992) ................................................................16

*Corestates Bank, N.A. v. United Chemical Technologies, Inc.*, 202 B.R. 33 (E.D. Pa. 1996)...........................................................................................................................27

*Donaldson v. Bernstein, 104 F.3d 547 (3d Cir. 1997)*...........................................................9, 14

*Donaldson v. Bernstein*, 104 F.3d 547 (3rd Cir. 1997)...........................................................28

*ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186 (8th Cir. 1995) ...............10

*Harris v. Nat'l Seal Co. Enhanced Severance Pay Plan*, Civ. No. H-03-4499, 2007 WL 1643225 (S. D. Tex. June 4, 2007) ...........................................................................10

*Hawkins v. Landmark Finance Co.*, 727 F.2d 324 (4th Cir. 1984) .........................................9, 14

*In re Andersen*, 179 F.3d 1253 (10th Cir. 1999)......................................................................28

*In re Antonious*, 373 B.R. 400 (Bankr. E.D. Pa. 2007)..................................................14, 15, 23

*In re Apex Automotive Warehouse, L.P.*, 238 B.R. 758 (Bankr. N.D. Ill. 1999).........................31

*In re Apex Oil Co., Inc.*, 406 F.3d 538 (8th Cir. 2005) .....................................14, 23, 24, 25, 26

*In re Armstrong World Industries, Inc.*, 348 B.R. 111 (D. Del. 2006) .................................27, 33

*In re Carter*, 38 B.R. 636 (Bankr. Conn. 1984).....................................................................24

*In re Cloninger*, 209 B.R. 125 (Bankr. E.D. Ark. 1997)..........................................................15

*In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004)............................................19

*In re Commercial Loan Corp.*, No. 06 A 1530, 2007 WL 756382 (March 14, 2007).................29

*In re Dabbs*, 72 B.R. 73 (Bankr. N.D. Ala. 1987)...................................................................24

*In re Diaz Rodriguez*, 357 B.R. 691 (Bankr. D.P.R. 2006).......................................................15

*In re Iannacone*, 21 B.R. 153 (Bankr. D. Mass. 1982) ..........................................................24

*In re Jenkins,* 330 B.R. 625 (Bankr. E.D. Tenn. 2005)............................................................15

*In re McNeil*, 13 B.R. 743 (Bankr. S.D.N.Y. 1981) ...............................................................24

*In re Nelson,* 100 B.R. 905 (Bankr. N.D. Ohio 1989) ...............................................15

*In re Okan's Foods, Inc.*, 217 B.R. 739 (Bankr. E.D. Pa. 1998)................................21

*In re Pardee*, 193 F.3d 1083 (9th Cir. 1999)...........................................................28

*In re Phillips,* 288 B.R. 585, (Bankr. M.D. Ga. 2002)...............................................15

*In re PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000) ......................................2, 13

*In re Rosinski*, 759 F.2d 539 (6th Cir. 1985)..............................................................9

*In re Schicke*, 290 B.R. 792 (10th Cir. B.A.P. 2003)................................................15

*In re Szostek*, 886 F.2d 1405 (3d Cir. 1989)............................................................28

*In re Tascosa Petroleum Corp.*, 196 B.R. 856 (D. Kan. 1996) ................................14

*In re Total Technical Services, Inc.*, 150 B.R. 893 (Bankr. D. Del. 1993) .................31

*In re Travelstead*, 227 B.R. 638 (D. Md. 1998) .......................................................29

*In re Underwood*, 299 B.R. 471 (Bankr. S.D. Ohio 2003).........................................23

*In re United Telecomms., Inc., Sec. Litig.*, No. 90-2251-EEO, 1993 WL 100202 (D. Kan. Mar. 4, 1993) ......................................................................................................16

*In re Varat Enterprises, Inc.*, 81 F.3d 1310 (4th Cir. 1996)......................................28

*In re WRT Energy Corp.*, 282 B.R. 343 (Bankr. W.D. La. 2001) ..............................31

*In re Xonics Photochemical, Inc.,* 841 F.2d 198 (7th Cir.1988)................................31

*In re Zinchiak*, 406 F.3d 214 (3d Cir. 2005) ........................................................9, 23

*In the Matter of Briscoe Enterprises, Ltd., II*, 994 F.2d 1160 (5th Cir. 1993) ............27

*Judd v. Wolfe*, 78 F.3d 110 (3d Cir. 1996) .................................................15, 19, 20

*Kabakjian v. United States*, 267 F.3d 208 (3d Cir. 2001) .......................................9, 11

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.,* 337 F.3d 314 (3d Cir 2003)...........................................................................................................20, 21

*Lincoln House, Inc. v. Dupre,* 903 F.2d 845 (1st Cir.1990)......................................16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)................................................11

*Matter of Case*, 937 F.2d 1014 (5th Cir. 1991) .........................................................9

*Miller v. United States,* 363 F.3d 999 (9th Cir. 2004) ...............................................................28

*Moyer v. United Dominion Industries, Inc.,* 473 F.3d 532 (3d Cir. 2007)....................................9

*New Hampshire v. Maine,* 532 U.S. 742 (2001)........................................................................22

*North Carolina v. Rice,* 404 U.S. 244 (1971)............................................................................16

*Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3d Cir. 1988) ......................20

*Pennycuff v. Fentress County Bd. of Educ.,* 404 F.3d 447(6th Cir. 2005)..................................21

*Platronics, Inc. v. United States,* No. 88 CIV 1892, 1990 WL 3202 (S.D.N.Y. Jan. 9,
    1990)..................................................................................................................................16

*Rosenshein v. Kleban,* 918 F. Supp. 98 (S.D.N.Y. 1996) ..........................................................20

*Schmidt v. Lessard,* 414 U.S. 473, 476 (1974) ........................................................................18

*Stecyk v. Bell Helicopter Textron, Inc.,* 295 F.3d 408 (3d Cir. 2002)....................................9, 26

*Surrick v. Killion,* 449 F.3d 520 (3d Cir. 2006).......................................................................16

*Texas v. United States,* 523 U.S. 296 (1998).....................................................................16, 17

*Travelers Ins. Co. v. H.K. Porter Co.,* 45 F.3d 737 (3d Cir. 1995) ............................................13

*United States v. Jenkins,* 333 F.3d 151 (3d Cir. 2003)................................................................9

*Wyatt, Virgin Islands, Inc.,* 385 F.3d 801 (3d Cir. 2004).........................................................16

*Yong Wong Park v. Atty. Gen. of U.S.,* 472 F.3d 66 (3d Cir. 2006) ..........................................21

## STATUTES AND REGULATIONS

11 U.S.C. § 1103.....................................................................................................................3

11 U.S.C. § 1109....................................................................................................................11

11 U.S.C. § 1125....................................................................................................................21

11 U.S.C. § 350................................................................................................................14, 23

11 U.S.C. § 524....................................................................................................................18

6 Del. C. § 18-805................................................................................................................10

Del Code Ann. tit. 6 § 18-201...............................................................................................10

Fed. R. Bankr. P. 2002 .........................................................................................................18

Fed. R. Bankr. P. 3016 ................................................................................................18

Fed. R. Bankr. P. 3017 ................................................................................................18

Fed. R. Bankr. P. 3020 ................................................................................................18

Fed. R. Bankr. P. 7001 ................................................................................................19

Fed. R. Bankr. P. 7025 ................................................................................................10

Fed. R. Bankr. P. 7065 ................................................................................................19

Fed. R. Civ. P. 25 ........................................................................................................10

Fed. R. Civ. P. 65 ........................................................................................................19

## OTHER AUTHORITIES

7 Collier on Bankruptcy § 1109.04[4][a] (Allen N. Resnick & Henry J. Sommer eds.,
    15th ed. 2004) ......................................................................................................15

H.R. Rep. No. 95-595, 95th Cong., 1st Sess., at 415-16 (1997)..................................30

## STATEMENT OF THE CASE

On May 12, 2003, Magnatrax Corporation and its subsidiaries and affiliates (the "Debtors") filed chapter 11 petitions in the United States Bankruptcy Court for the District of Delaware.  (*See* Bankr. Ct. Doc. No. 1.)  On November 19, 2003, the Bankruptcy Court confirmed the Debtors' Fifth Amended and Restated Joint Plan of Reorganization (the "Plan"). (App. 2.)[1]  Pursuant to the Plan, the Debtors created the Magnatrax Litigation Trust (the "Trust") and transferred to that Trust "all right, title and interest of the Magnatrax Debtors and the Reorganized Magnatrax Debtors to pursue, litigate, settle or otherwise resolve any Cause of Action against Onex Corporation or any Onex Affiliate …".  (App. 4 at 4 and § 4.21.)

On May 10, 2005, Richard Kipperman, in his capacity as trustee of the Trust (the "Trustee"), filed suit (the "District Court Action") against Onex Corporation and various affiliated entities including the appellant here, Onex American Holdings, LLC ("Onex American") in the United States District Court for the Northern District of Georgia (the "District Court"), the judicial district in which Magnatrax's corporate headquarters are located.  (App. 13.) All of the defendants in that litigation moved to dismiss on a variety of grounds including that the Trustee's recovery should be limited to "the amount of injury to the creditors who opted into the litigation trust."  (*Id.* at 15.)  On September 15, 2006, the District Court declined to rule on the issue, stating that this question was "better determined after liability issues."  (*Id.*)

On November 8, 2006, the Bankruptcy Court closed the Debtors' chapter 11 cases.  (App. 11.)  Almost six months after the District Court had denied the motion to dismiss and four months after the chapter 11 cases had been closed, Onex American moved to reopen the chapter 11 cases to prosecute what it called its motion "for Order Enforcing Chapter 11 Plan."  (App. 1,

---

[1] The documents contained in Onex American's Appendix shall be referred to as "App." and the tab number assigned to such document.

14.)  In that motion Onex American asked the Bankruptcy Court to limit the Trustee's damages in the District Court Action.  (App. 14.)

After extensive briefing and argument on both the merits of the substantive request and the motion to re-open the case, the Bankruptcy Court denied the motion to re-open the Debtors' chapter 11 cases *without prejudice*, holding that the motion was not ripe for adjudication because liability on the claims had not yet been determined in the District Court.  (Trustee App. 1 at 35.)[2] The Court further noted its concern that the motion to reopen had been filed by an entity that was no longer in existence. (*Id.* at 34.)  On April 26, 2007, Onex American appealed.  (Bankr. Ct. Doc. No. 1768.)

## JURISDICTIONAL STATEMENT

The Trustee disputes that this Court has jurisdiction over this appeal because the appeal has been brought by an entity that no longer exists.  The appellant Onex American was dissolved on December 13, 2002.  (App. 15.)  Because it is not a legal entity, Onex American lacks standing to appear before this Court and prosecute the instant appeal.  *Olympic Coast Inv. v. Seipel*, No. 05-36170, 2006 WL 3431874 *10 (9th Cir. November 29, 2006) ("[i]t is fundamental that a suit brought in the name of that which is not a legal entity is a mere nullity."); *In re Midpoint Development, L.L.C.*, 466 F.3d 1201, 1207 (10th Cir. 2006) (bankruptcy filing by entity that had ceased to exist was a nullity).  In addition, Onex American also does not have standing here because it lacks a pecuniary interest in the outcome of this appeal.  *See, e.g., In re*

---

[2] Because Onex American's Appendix did not include certain key pleadings and transcripts, including the transcript of the Bankruptcy Court's hearing and ruling on Onex American's motion to reopen the chapter 11 cases, the Bankruptcy Court's written order denying the motion to reopen, or the written memoranda filed by the Trustee below, the Trustee has filed his own Appendix containing these documents which is referred to herein as "Trustee App ___."

*PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir.2000).  Accordingly, this Court lacks jurisdiction to hear the appeal and it should be dismissed.

## STATEMENT OF FACTS

### A.    The Debtors and Their Bankruptcy Filings

The Debtors were manufacturers and sellers of pre-engineered metal building and other diversified construction products and services.  (App. 3 at 18.)  Prior to their bankruptcies, and at the direction of Onex Corporation (the ultimate owner of the Debtors), the Debtors pursued a risky strategy of growth through leveraged buyouts (the "LBOs").  (*Id.* at 41.)  The LBOs were structured to give Onex Corporation the benefit of the Debtors' upside potential, as ultimate owner of the Debtors, while limiting its downside exposure by forcing the Debtors to repay the costs associated with those acquisitions.  As a result of the large debt-load incurred in the LBOs, the Debtors were unable to sustain their operations during the moderate downturn in the construction market in 2002.  (*Id.*)

On May 12, 2003, the Debtors filed for bankruptcy.  (*Id.* at 1.)  When they filed their petitions, the Debtors reported that as of the petition date Onex American, CIBC WCM, Inc., and Ontario Teachers Pension Fund held Magnatrax Corporation stock.  (Bankr. Ct. Doc. No. 1 at 7.)  In fact, Onex American had been dissolved five months earlier on December 13, 2002.  (App. 15.)

### B.    The Creditors Committee and its Investigation of Onex Corporation

Thereafter, the United States Trustee appointed an official unsecured creditors' committee (the "Committee").  (*Id.* at 46.)  Consistent with its duties pursuant to 11 U.S.C. § 1103(c)(2), the Committee began an investigation of potential causes of action relating to the LBOs and ultimately concluded that the Debtors' bankruptcy estates had valid causes of action against Onex Corporation and its affiliates, including Onex American.  (*Id.* at 48-49.)

Before the investigation could be completed, however, the Committee and the Debtors reached an agreement to assign all of the Debtors' causes of action against Onex Corporation and its affiliates to a Trust which would then prosecute the claims for the benefit of those unsecured creditors that elected to participate in the Trust. (*Id.* at 97-98.) The Committee's agreement with the Debtor was memorialized in the Plan. (App. 4.)

### C.    The Debtors' Plan and the Confirmation Hearing

The Plan which the Debtors filed along with the accompanying Trust Agreement and Disclosure Statement all made it clear that the Debtors and the Committee had agreed that *all* of the Debtors' causes of action against Onex Corporation and its affiliates without any limitation on recovery would be assigned to a Trust and prosecuted for the benefit of those unsecured creditors that elected to participate in the Trust. The Plan directed that, "[o]n the Effective Date, the Magnatrax Debtors shall irrevocably transfer the Assigned Causes of Action to the Litigation Trust, for and on behalf of the Trust Beneficiaries." (App. 4 at § 4.21(b).) The Assigned Causes of Action are defined to include "*all* right, title and interest of the Magnatrax Debtors and the Reorganized Magnatrax Debtors to pursue, litigate, settle or otherwise resolve *any Cause of Action* against Onex Corporation or any Onex Affiliate ...." (*Id.* at § 1.20) (emphasis added). The Plan defined Cause of Action broadly as:

> without limitation, *any and all* actions, causes of actions, liabilities, obligations, suits, debts, indebtedness (for borrowed money or in the nature of a guarantee), dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, trespasses, damages, rights, executions, claims (as that term is defined in section 101(5) of the Bankruptcy Code), objections to claims, judgments and demands whatsoever, *whether known or unknown*, choate or inchoate, existing or hereafter arising, *suspected or unsuspected*, in law, equity or otherwise.

(*Id*. at § 1.31) (emphasis added).

The Trust Agreement reinforced that all claims without limitation were to be assigned to the Trust as it provided that "the Magnatrax Debtors hereby irrevocably transfer to the Litigation

Trust … *all* the right, title and interests of the Magnatrax Debtors in the Litigation Trust Assets, to have and to hold unto the Litigation Trust and its successors and assigns forever." (App. 9 at § 2.2.)  The Trust Agreement defined the Trust Assets to include the Assigned Causes of Action, as that term was defined by the Plan.  (*Id*. at § 1.1; App. 4 at § 1.86.)  Furthermore, the Trust Agreement declared that the primary purpose of the Trust is "maximizing the value of the Litigation Trust Assets for distribution … to Trust Beneficiaries."  (App. 9 at § 2.3.)

The Disclosure Statement which was sent to creditors and parties in interest along with the Plan similarly provided that "the Litigation Trust is being formed to pursue the Assigned Causes of Action, which represent the rights of the Debtors to pursue and litigate *any* claims against Onex and the Onex Affiliates."   (App. 3 at 97) (emphasis added).   The Disclosure Statement further provided that:

> The Litigation Trustee will have full authority to take any steps necessary to administer the Litigation Trust Agreement, including, without limitation, the duty and obligation to liquidate Litigation Trust Assets, transfer, sell, dispose of or otherwise resolve or compromise the Litigation Trust Assets, to make distributions therefrom to the Trust Beneficiaries, to pursue and settle any of the rights and claims with respect to the Litigation Trust Assets[.]"

(*Id*. at 103), and, that:

> On the Effective Date, the Magnatrax Debtors will irrevocably transfer to the Litigation Trust, for and on behalf of the Trust Beneficiaries, all of the Magnatrax Debtors' and the Reorganized Magnatrax Debtors' rights and standing to litigate, settle and otherwise resolve the Assigned Causes of Action.

(*Id*. at 104.)

The Plan gave creditors holding unsecured claims a choice -- either to receive a distribution in cash equal to approximately 8.8% of each unsecured creditor's claim or to contribute a portion of their cash distribution to the Trust and receive a beneficial interest in the Trust and become "entitled to receive their pro rata share of *any* proceeds the Litigation Trust may receive from pursuing the Assigned Causes of Action."   (App. 3 at 15 (emphasis added).)

The Disclosure Statement specifically cautioned all creditors and the Debtor's equity security holders that "[t]he value of the claims against Onex and the Onex Affiliates is difficult to ascertain with any reasonable certainty because of the amount of discovery and investigation yet to be completed."  (App. 3 at 98.)

On November 17, 2003, the Bankruptcy Court conducted a confirmation hearing and confirmed the Plan.    (App. 2.)  At the confirmation hearing, the Debtors' counsel made it clear that the Trust was to receive an uncapped grant of all of the Debtor's causes of action against Onex Corporation and its affiliates, including Onex American.  As Debtors' counsel explained at the Plan's confirmation hearing:

> [I]n a spirit of compromise, to allow this case to move forward to confirmation on a consensual basis, the parties agreed … there would be certain causes of action … transferred to a litigation trust to be controlled by the litigation trustee who would be nominated by the Creditors' Committee.  And that that litigation trust would be financed by the creditors.  That if they felt there was a cause of action worth pursuing or that they -- if they were willing to contribute approximately 25 percent, roughly, of their distribution to this trust, that they would get the benefit of *whatever* this trust would produce.

(Trustee's App. 5 at pgs. 68-69 (emphasis added).)  Although it was represented by six different attorneys from two different law firms during the chapter 11 cases, Onex American did not object to the confirmation of the Plan, which provided for this complete transfer of claims to the Trust and that all of its equity interests in the Debtors were "deemed cancelled and extinguished...".  (App. 4 at § 3.16.)

In its Confirmation Order, the Bankruptcy Court reiterated the expansive nature of the Assigned Causes of Action to be transferred to the Trust, stating:

> "[O]n the Effective Date, the Reorganized Magnatrax Debtors will transfer and assign, or cause to be transferred and assigned, to the Litigation Trust, *all their right, title and interest* in and to the Assigned Causes of Action.  The transfers of the Assigned Causes of Action by the Debtors to the Litigation Trust … (a) are or shall be legal, valid and effective transfers of the Assigned Causes of Action, (b) vest or shall vest the Litigation Trust with good title to such Assigned Causes of

Action free and clear of all Liens, charges, Claims or encumbrances except as expressly provided in the Plan or this Confirmation Order ….”

(App. 2 at ¶ 7) (emphasis added).)

On January 8, 2004, the Debtors established the Trust by executing the Trust Agreement. (App. 9 at p. 1.)  On January 20, 2004, the Plan became effective and was deemed substantially consummated.  (Appellant's Br. 9.)  On November 8, 2006, the Bankruptcy Court closed the Debtors' chapter 11 cases. (App. 11.)

### D.    The District Court Action

On May 10, 2005, the Trustee commenced the District Court Action against, among others, Onex American (Case No. 105 CV 1242 (N.D. Ga.)) seeking in excess of $600 million in damages.  (Appellant's Br. 10.)  On August 1, 2005, Onex American and its codefendants moved to dismiss the District Court Action on various grounds, including that the Trustee lacked standing to pursue the Assigned Causes of Action because the Trust was not properly created and that if the Trustee did have standing, his recovery was limited by the amount of the claims of the unsecured creditors that elected to participate in the Trust.  (App. 13 at 12-15.)  Onex American appeared in the District Court Action even though it had been dissolved on December 13, 2002. (App. 15.)

On September 15, 2006, the District Court rejected the defendants' attack on the Trustee's standing, noting that “[d]efendants are barred from attacking Plaintiff's standing as such action constitutes a collateral attack on the [Plan]...”.  (*Id.* at 12.)  The District Court also rejected the defendants' attempts to limit damages, holding that this was “an issue that is better determined after liability issues.”  (*Id.* at 15.)

### E.    The Motion To Re-Open

Dissatisfied with the District Court's ruling, on March 12, 2007, Onex American filed its motion which it styled as a motion to enforce the Plan. (Tab. 14.) The gist of the motion was that the confirmation order approving the Plan had to have violated the absolute priority rule with respect to Onex American's equity interests because of the amount of damages sought in the District Court Action. The motion asked the Bankruptcy Court to limit any recovery in the District Court Action to the amount of the claims of unsecured creditors participating in the Trust. (*Id.*)

Subsequently, Onex American filed its Motion to Reopen. (App. 1.) On April 13, 2007, the Bankruptcy Court held a hearing on both motions. After extensive argument, the Bankruptcy Court concluded that the relief requested by Onex American was not ripe for determination and any decision the Court might issue would be an advisory opinion. (Trustee's App. 1 at 33-35.) The Bankruptcy Court also concluded that re-opening the bankruptcy case to hear Onex American's motion "would be an inappropriate interference by this Court in pending litigation in Georgia." (*Id.* at 34.) The Bankruptcy Court also expressed concern about "the status of the movant here as a dissolved limited liability company whose charter in effect has been cancelled at this point. But, because I'm not addressing the merits at this time and therefore am not reopening the case at this time for the limited purpose that Onex sought to reopen it, I don't have to reach that issue." (*Id.*)

Following the hearing, on April 16, 2007, the Bankruptcy Court entered an order denying the Motion to Reopen on the grounds that (a) Onex American's dispute was not ripe, and (b) any decision on its motion to enforce "would interfere with the jurisdiction of the District Court in violation of the principle of comity and contrary to the best interests of justice." (Trustee's App. 2 at 3.)

## STANDARD OF REVIEW

On appeal, this Court reviews a bankruptcy court's findings of fact for clear error and exercises plenary review over the bankruptcy court's legal determinations. *In re Zinchiak*, 406 F.3d 214, 221 (3d Cir. 2005). Bankruptcy courts, however, are given broad discretion in deciding whether to reopen a bankruptcy case, *id.* at 223, and thus, this Court reviews such a decision under an abuse of discretion standard. *Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir. 1997); *see also In re Zinchiak*, 406 F.3d at 222 ("the decision of the Bankruptcy Court to reopen a previously closed bankruptcy proceeding is reviewed for abuse of discretion."); *Matter of Case*, 937 F.2d 1014, 1018 (5th Cir. 1991) (same); *In re Rosinski*, 759 F.2d 539, 540 -41 (6th Cir. 1985) (same); *Hawkins v. Landmark Finance Co.*, 727 F.2d 324, 327 (4th Cir. 1984) (same).

To establish an abuse of discretion, Onex American is required to show that the Bankruptcy Court's decision was "arbitrary, fanciful or clearly unreasonable," *Moyer v. United Dominion Industries, Inc.,* 473 F.3d 532, 542 (3d Cir. 2007), to such a degree that "no reasonable person would adopt the [lower] court's view." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002). Furthermore, this Court "may affirm a judgment on any ground apparent from the record, even if the [lower] court did not reach it." *Kabakjian v. United States*, 267 F.3d 208, 213 (3d Cir. 2001); *United States v. Jenkins*, 333 F.3d 151, 153 (3d Cir. 2003).

## ARGUMENT

## I.    THE APPEAL SHOULD BE DISMISSED FOR LACK OF JURISDICTION.

As an initial matter, this Court should dismiss the pending appeal because the appellant Onex American lacks standing as (1) it is a dissolved entity without the ability to appear in this Court and prosecute this appeal, and (2) it does not have a pecuniary interest in the outcome of this matter nor is its alleged injury redressable.

**A.  Onex American Lacks Standing To Bring This Appeal Because It Is Not A Legal Entity.**

As a dissolved entity, Onex American lacks standing to prosecute this appeal.  Delaware law provides that "[a] limited liability company formed under this chapter shall be a separate legal entity, the existence of which as a separate legal entity shall continue until cancellation of the limited liability company's certificate of formation."  Del Code Ann. tit. 6 § 18-201.  Onex American admits that it was dissolved under Delaware law almost four years ago and well before the start of this appeal.  (App. 15.)   Accordingly, because it is not a legal entity, Onex American lacks standing to prosecute this appeal (just as it lacked standing to bring the motions it filed in the Bankruptcy Court).  *See e.g., Midpoint Development,* 466 F.3d at 1207 (where purported debtor, an Oklahoma limited liability company, did not file for Chapter 11 relief until after it had ceased to be a legal entity, its bankruptcy filing was a nullity and subject to dismissal).

Recognizing its lack of standing, Onex American asserts in a footnote that Onex Corporation is a transferee of Onex American's rights and thus it could have pursued the motions below and should be allowed to pursue this appeal based upon Fed. R. Civ. P. 25. (Appellant's Br. at 13 n.10.)  Contrary to its assertion, however, Fed. R. Civ. P. 25, made applicable by Fed. R. Bankr. P. 7025 to bankruptcy cases, "does not apply to transfers of interest that occur 'prior to the commencement of a lawsuit.'" *Harris v. Nat'l Seal Co. Enhanced Severance Pay Plan*, Civ. No. H-03-4499, 2007 WL 1643225, *2 (S. D. Tex. June 4, 2007) (quoting *ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 190 (8th Cir. 1995)).  Because the Debtors' chapter 11 cases were commenced well after the dissolution of Onex American, Rule 25 cannot save Onex American's appeal.

Equally misplaced is Onex American's reliance upon 6 Del. C. § 18-805, which permits the appointment of a trustee "with the power to prosecute and defend, in the name of the limited

liability company … all such suits as may be necessary or proper."   That statute is inapplicable because no interested party has obtained the required order for Onex American from the Delaware Court of Chancery upon a showing of good cause.   Accordingly, this Court should dismiss this appeal for want of jurisdiction because the appellant, Onex American lacks standing.[3]

**B.    Onex American Lacks Standing Because It Has No Pecuniary Interest In This Appeal And Its Purported Injury Will Not Be Redressed By A Favorable Decision.**

Onex American also lacks standing because it has no pecuniary interest in the outcome of this appeal and the injury it complains of will not be redressed by a favorable decision. "Although bankruptcy courts are not Article III courts, they enforce constitutional limitations on standing." *In re Tascosa Petroleum Corp.*, 196 B.R. at 863 n.5; 7 Collier on Bankruptcy § 1109.04[4][a] (Allen N. Resnick & Henry J. Sommer eds., 15th ed. 2004) ("[E]ven though section 1109(b) might appear to confer standing on any party in interest in any proceeding in a case, the section cannot be construed in a manner that would violate Article III's case or controversy requirement.").   As the Supreme Court explained, under Article III's standing requirements "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

In this case, Onex American argues that, "in a cramdown scenario no party in interest may recover more than it is owed at the expense of those whose investments will be wiped out." (Appellant's Br. at 15).   Thus, Onex American argues, if the District Court Action has value exceeding the amount of the Trust Beneficiaries' claims, that would be a violation of the absolute

---

[3] This Court also should affirm the Bankruptcy Court's ruling on the alternative basis that Onex American did not have the capacity to bring the motions it filed below.  *See Kabakjian* 267 F.3d at 213 (An appeals court "may affirm a judgment on any ground apparent from the record, even if the [lower] court did not reach it.").

priority rule.  Its remedy for this alleged injury is to enjoin the Trustee from recovering (or even seeking) an amount in excess of the Trust Beneficiaries' now extinguished claims.

Examining Onex American's alleged injury -- the transfer of value in violation of the Bankruptcy Code's priority scheme -- the Bankruptcy Court hypothesized that the remedy for the alleged violation might require reopening the bankruptcy and distributing any excess recovery to all the Plan's impaired classes, presumably in order of their priority, leaving Onex American and the other equity holders to take last.  (Trustee's App. 1 at 23 ("[I]f it's a 600 million dollar recovery it creates a whole different set of issues including perhaps the revocation of the confirmation order and bringing into play other interested parties who might be entitled to share in the recovery.")  To this suggestion Onex American quickly responded:

> I don't believe, and I think the trustee has argued this, that the Court has the power to revoke the confirmation order.  I think it is, frankly, too late in the day to do that. We didn't seek that relief. I don't know under what theory one could possibly at this point seek revocation.

(Trustee's App. 1 at 24.)

If, as Onex American vehemently argues, confirmation cannot be revoked and the value of the Assigned Causes of Action distributed to all interested parties, then there is no possible remedy for the injury Onex American has alleged, and as such it lacks standing.  Simply enjoining the Trust Beneficiaries from recovering does not vindicate Onex American's supposed right as a former equity holder of the Debtors as its former interest in the Debtors will remain extinguished.   Indeed, under such a scenario, the value of the Assigned Causes of Action would not go to the Trust Beneficiaries, such value would instead go to the defendants in the District Court Action, an even more egregious violation of the absolute priority rule.[4]  The fact that Onex

---

[4] The foolishness of Onex American's reasoning can be illustrated by the scenario in which, instead of a cause of action, the property transferred to the Trust was a piece of real estate with a good-faith estimated value at the time of the Plan's effective date that would not result in the

American is not seeking any true redress underscores the real purpose of its motions -- to provide a defense to its former affiliate, Onex Corporation, in the District Court Action.

Because the alleged injury to Onex American will not be redressed by the relief it seeks, and Onex American adamantly opposes any form of true redress, Onex American lacks Article III standing, an additional ground on which this Court should affirm the Bankruptcy Court's decision.

But, even if Onex American satisfied the requirement of Article III standing, it does not meet the requirements for standing in a bankruptcy appeal. Appellate standing in bankruptcy cases is limited to "persons aggrieved." *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir.1995). Only those "whose rights or interests are directly and adversely affected pecuniarily" by a bankruptcy court's order may bring an appeal. *In re PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir.2000). No possible ruling on this appeal or the underlying motion to enforce the plan will affect Onex American's alleged rights as a former equity interest holder of the Debtors. Its alleged rights as a former equity holder were extinguished under the Plan (App. 3 at § 3.16) and will remain extinguished. Indeed, as stated above, Onex American is not even seeking a pecuniary benefit. As such it lacks appellate standing, and the Bankruptcy Court's decision should be affirmed.

---

Trust Beneficiaries receiving more that 100% of their claims. After the effective date of the Plan, valuable and previously unknown mineral deposits are found on the property, increasing the property's value over 100 times. Onex American ask this Court to hold that the property cannot be sold for its true value, but must be sold at a price not to exceed the value of the Trust Beneficiaries' claims. While this would prevent the Trust Beneficiaries from receiving more than the value of their claims, it would result in a huge and unjust windfall to any purchaser, in violation of Onex American's (albeit incorrect) articulation of the absolute priority rule.

## II.    THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION WHEN IT REFUSED TO RE-OPEN THE DEBTORS' CHAPTER 11 CASES.

The Bankruptcy Court did not abuse its discretion when it refused to reopen the Debtors' chapter 11 cases as it properly concluded that the motion to enforce (a) was not ripe for consideration, and (b) would interfere with the District Court Action.  Additionally, this Court should uphold the Bankruptcy Court's decision because Onex American has failed to establish any just cause requiring the case to be reopened.

### A.    Legal Standards To Reopen A Bankruptcy Case.

Pursuant to 11 U.S.C. § 350(b), "[a bankruptcy] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."  "The statute is clearly phrased in permissive language and states that bankruptcy courts may, but are not required to, reopen a closed bankruptcy estate [for proper cause]." *In re Apex Oil Co., Inc.*, 406 F.3d 538, 542 (8th Cir. 2005); *Hawkins v. Landmark Finance Co.*, 727 F.2d 324, 326 (4th Cir. 1984) ("The statute is phrased in permissive language, and we think that it would do violence to the statute either to say that a closed case must be reopened or that a closed case may never be reopened.") *In re Antonious*, 373 B.R. 400, 406-07 (Bankr. E.D. Pa. 2007) ("Although a bankruptcy court may reopen a closed case so as to hear litigation seeking to enforce the discharge injunction … it has the discretion not to do so.").  This Court will only overturn a bankruptcy court's decision denying a motion to reopen for the rare case in which the lower court abused its broad discretion.  *Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir. 1997).

As a precondition to granting a motion to reopen a bankruptcy case, a bankruptcy court must first determine whether the constitutional requirement of ripeness and standing are satisfied.  *In re Tascosa Petroleum Corp.*, 196 B.R. 856, 863 n.5 (D. Kan. 1996) ("Although

14

bankruptcy courts are not Article III courts, they enforce constitutional limitations on standing."); 7 Collier on Bankruptcy § 1109.04[4][a] (Allen N. Resnick & Henry J. Sommer eds., 15th ed. 2004) ("[E]ven though section 1109(b) might appear to confer standing on any party in interest in any proceeding in a case, the section cannot be construed in a manner that would violate Article III's case or controversy requirement.")

Among the factors a bankruptcy court may consider in deciding if a bankruptcy case should be reopened is "whether a non-bankruptcy forum … has the ability to determine the dispute to be posed by the debtor were the case reopened." *In re Antonious*, 373 B.R. at 405. Furthermore, it is the movant's burden to demonstrate to the Bankruptcy Court "circumstances sufficient to justify the reopening." *In re Antonious*, 373 B.R. at 405.; *In re Cloninger*, 209 B.R. 125, 126 (Bankr. E.D. Ark. 1997); *In re Nelson,* 100 B.R. 905, 906 (Bankr. N.D. Ohio 1989). A bankruptcy court does not abuse its discretion in refusing to reopen a case where a movant has failed to establish a basis for the ultimate relief he seeks, such that reopening the case would serve no purpose. *See e.g., Judd v. Wolfe*, 78 F.3d 110, 116 (3d Cir. 1996); *see also In re Diaz Rodriguez*, 357 B.R. 691, 699 (Bankr. D.P.R. 2006) ("Courts should not reopen a case if doing so would be futile."); *In re Jenkins,* 330 B.R. 625, 628 (Bankr. E.D. Tenn. 2005) (same); *In re Phillips,* 288 B.R. 585, 587 (Bankr. M.D. Ga. 2002) (same); *In re Schicke*, 290 B.R. 792, 798 (10th Cir. B.A.P. 2003) ("A bankruptcy court that refuses to reopen a Chapter 7 case that has been closed will not abuse its discretion if it cannot afford the moving party any relief in the reopened case.").

### B.    The Bankruptcy Court Correctly Held That Onex American's Motion Was Not Ripe For Adjudication As It Is Contingent Upon A Substantial Recovery In The District Court Action.

The Bankruptcy Court properly concluded that any dispute over whether a recovery in the District Court Action would violate the Plan or its Confirmation Order will only be ripe if the

Trustee actually receives "a judgment in an amount Onex believes would violate the Plan." (Trustee's App. 2 at 3.)   Arising from the Constitution's case or controversy requirement, the ripeness doctrine determines when a dispute is fit for adjudication.   *Binker v. Com. of Pa.*, 977 F.2d 738, 753 (3d Cir. 1992).  As the Third Circuit has explained:

> Ripeness prevents courts from "entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). Ultimately, a case must involve "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).

*Surrick v. Killion*, 449 F.3d 520, 527 (3d Cir. 2006).

A dispute is not ripe for judicial determination "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States,* 523 U.S. 296, 300 (1998); *Wyatt, Virgin Islands, Inc.*, 385 F.3d 801, 806 (3d Cir. 2004) (same). "When a claimed injury is contingent upon the outcome of a separate, pending lawsuit, courts generally dismiss claims as premature." *Pall v. KPMG, LLP*, 2006 WL 2800064, *3 (D. Conn. September 29, 2006) (dismissing claim as not ripe where the claim was contingent upon the outcome of other litigation); *In re United Telecomms., Inc., Sec. Litig.,* No. 90-2251-EEO, 1993 WL 100202, at *3 (D. Kan. Mar. 4, 1993) (same); *see also Lincoln House, Inc. v. Dupre,* 903 F.2d 845, 847 (1st Cir.1990) (dismissing claim as not ripe where injury was contingent upon outcome of pending state court litigation); *Platronics, Inc. v. United States,* No. 88 CIV 1892, 1990 WL 3202, at *1 (S.D.N.Y. Jan. 9, 1990) (applying New York law, court dismissed action for indemnity where damages were "speculative" until state court action was resolved).

Here Onex American seeks to reopen the Debtors' bankruptcy cases for the limited purpose of having the Bankruptcy Court decide its motion to enforce the Plan.  (App. 1 at 1.) The relief that Onex American seeks in that motion -- an order capping the Trustee's recovery

from Onex American and the other defendants in the District Court Action -- may never be necessary if the Trustee does not prevail or prevails only to a limited extent. (App. 14 at 14.)[5] Because the alleged right Onex American seeks to protect will be violated, if at all, only after a final resolution of the District Court Action, its grievance rests upon "contingent future events that may not occur as anticipated," and, as such, the Bankruptcy Court was correct in holding that consideration of the Motion to Enforce was not ripe. *Texas,* 523 U.S. at 300

> **C.    The Bankruptcy Court Correctly Rejected Onex American's Theory That The Trustee, By Merely Pleading Its Claims In The District Court Action In An Amount Exceeding The Trust Beneficiaries' Former Claims, Violated The Plan Or Confirmation Order As Neither The Plan Nor Confirmation Order Contains Such An Injunction.**

In an effort to manufacture a ripe controversy, Onex American argues without any legal support that the Trustee has violated the Plan and Confirmation Order by merely pleading the Trust's claims in the District Court Action in amounts greater than the Trust Beneficiaries' former claims against the Debtors. Lacking any case law on point, Onex American argues by analogy that "[a]ny attempt to collect more than 100% is similar to an attempt to collect a claim expunged by the debtor's bankruptcy discharge, which is clearly prohibited." (Appellant's Br. 15) Accordingly, Onex American argues that because (a) bankruptcy plans provide for both the discharge of claims and the embodiment of the absolute priority rule; and (b) after confirmation of the plan, a bankruptcy court may enforce the plan's discharge injunction against the mere attempt of a creditor to collect on a discharged debt; then it follows that (c) the bankruptcy court

---

[5] Onex American repeatedly states that "The Trustee does not dispute this absolute limit on the Trust beneficiaries' recovery. Nor can he: permitting a senior creditor to attempt to recover more than 100% of its claims in a cramdown scenario violates the absolute priority rule." Onex American is absolutely incorrect. To the extent Onex American argues that the absolute priority rule prevents the Trustee from recovering the full amount of any judgment in the District Court Action, the Trustee has repeatedly and correctly argued that the absolute priority rule, a factual finding necessary to the confirmation of a cram-down plan, does not limit in any way the Trustee's recovery in the District Court Action. *See* Section III *infra*.

17

may enforce a bankruptcy plan against a post-confirmation attempt to realize more than 100% of the value of a claim.  (Appellant's Br. at 15-19.)  To that end, Onex American cites numerous cases for the proposition that "the mere attempt of a creditor bound by a confirmed plan of reorganization to collect more than what is permitted by such plan presents a justiciable controversy."  (*Id.* at 16.)

The analogy between discharged debts and the absolute priority rule, however is entirely specious.  The Bankruptcy Code specifically enjoins the *commencement* of an action for a debt discharged under a bankruptcy plan, 11 U.S.C. § 524(a)(2), but provides no injunction embodying the absolute priority rule.  As the Supreme Court explained, "basic fairness requires that those enjoined [by court order] receive explicit notice of precisely what conduct is outlawed."  *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).

Consistent with this requirement, the Bankruptcy Code and Rules clearly preclude injunctions from being issued accidentally or implicitly.  Rather, the Rules require that, for a plan to enjoin conduct not "otherwise enjoined under the Code," the plan, disclosure statement, notice of confirmation hearing, and confirmation order must all "(1) describe in reasonable detail all acts enjoined; (2) be specific in its terms regarding the injunction; and (3) identify the entities subject to the injunction."  Fed. R. Bankr. P. 2002(c)(3), 3016(c), 3020(c)(1).  *See also* Fed. R. Bankr. P. 3017(f) (requiring special notice for injunctions against parties that are not creditors or equity security holders).

Those actions "otherwise enjoined under the Code" are similarly set forth with the required specificity.  For example, Bankruptcy Code section 524(a)(2) provides that

> A discharge in a case under this title … operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [debt discharged in a plan of reorganization] as a personal liability of the debtor … .

18

Injunctions not explicitly contained in the Bankruptcy Code or a bankruptcy plan can only be issued in an adversary proceeding and in accordance with Fed. R. Civ. P. 65. *See* Fed. R. Bankr. P. 7001, 7065.

Thus, whereas the Bankruptcy Code and, in this case, the Plan and Confirmation Order, specifically enjoin discharged creditors from even commencing an action to collect on a discharged debt (App. 4 at § 9.1; App. 2 at ¶ 31), the absolute priority rule does not provide for such an injunction.[6] If the Plan (or Bankruptcy Code) had explicitly enjoined the Trustee from commencing a legal action in an amount greater than the amount of the Trust Beneficiaries' claims then there would be a ripe issue for the Bankruptcy Court to rule upon. Because the Plan contains no such provision, there is no ripe issue.

The Bankruptcy Court recognized this gapping deficiency in Onex American's theory and appropriately rejected it, stating that "the Third Circuit has said on occasion … 'You know, people can sue, in effect, but that doesn't mean that they'll collect.' ") (Trustee's App. 1 at 34-35 (paraphrasing *In re Combustion Engineering, Inc.*, 391 F.3d 190, 221 (3d Cir. 2004)).) Because Onex American failed to state a cognizable legal theory entitling it to relief, the Bankruptcy Court was not required to reopen the bankruptcy cases before rejecting it. *Judd*, 78 F.3d at 116. This Court should similarly reject this legally inadequate theory and affirm the Bankruptcy Court's Order.

---

[6] The absolute priority rule is only a factual prerequisite to confirming a cram-down plan, 11 U.S.C. § 1129(b), and need only be proved by a preponderance of the evidence. *In re Armstrong World Industries, Inc.*, 348 B.R. 111, 120 (D. Del. 2006); *In the Matter of Briscoe Enterprises, Ltd., II*, 994 F.2d 1160, 1165 (5th Cir. 1993); *Corestates Bank, N.A. v. United Chemical Technologies, Inc.*, 202 B.R. 33, 45 (E.D. Pa. 1996).

### D. The Bankruptcy Court Correctly Rejected Onex American's Theory That The Trustee's Actions Were Barred By Judicial Estoppel.

Onex American additionally argues, without legal or factual support, that "the Bankruptcy Court should have remedied the Trustee's abuse of the judicial process." (Appellant's Br. at 19.) Apparently, though never stated, Onex American believes that the doctrine of judicial estoppel, or alternatively referred to as "the Court's … interest of maintaining the integrity of its own proceedings" (Trustee App. 1 at 25), provided a sufficiently ripe issue for the Bankruptcy Court to reopen the case. But, like Onex American's previous argument, this theory was so obviously deficient that the Bankruptcy Court did not need to reopen the case before rejecting it. *Judd*, 78 F.3d at 116.

Onex American bases its theory on several inapposite cases holding that debtors who fail to fully disclose causes of action as property of their bankruptcy estates are judicially estopped from pursuing such causes of action after their bankruptcy cases have concluded. Onex American interprets those inapplicable cases to support its incorrect conclusion that because the Committee allegedly failed to fully disclose the nature of the Assigned Causes of Action transferred to the Trust by the Debtors, the Trust and its beneficiaries are estopped from asserting the Debtors' Assigned Causes of Action to their fullest extent. Onex American is wrong as a matter of both the law and the facts.

The primary case Onex American cites, *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.,* 337 F.3d 314 (3d Cir 2003), is based on the premise that prepetition causes of action are rightfully property of a debtor's bankruptcy estates, and that a debtor should not be able to cheat his or her estate out of its rightful property by failing to fully disclose such property during the bankruptcy case. *See also Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3d Cir. 1988); *Rosenshein v. Kleban,* 918 F. Supp. 98 (S.D.N.Y. 1996); *In re Okan's*

*Foods, Inc.*, 217 B.R. 739 (Bankr. E.D. Pa. 1998).  As the other cases Onex American cites illustrate, this rule is closely related to the doctrine of judicial estoppel, which generally precludes a party from taking a position in a case in order to derive some benefit, where the position is contrary to a position he has taken and benefited from in earlier legal proceedings.

These doctrines have no application here for several reasons.  First, unlike the cause of action in *Kristal*, the Assigned Causes of Action in this case were not retained by the Debtors, but rather administered for the benefit of the Debtors' creditors under the Plan through distribution of the Assigned Causes of Action to the Trust.  Second, under *Kristal* and other similar cases, the disclosure requirement is on the plan proponent, and neither the Trust nor the Trust's beneficiaries were proponents of the Plan.  Thus, they had no disclosure obligations under the Plan and made no representations in the Plan or Disclosure Statement.  *See generally* 11 U.S.C. § 1125.

Furthermore, Onex American fails to cite to any cases where a party has been judicially estopped from pursuing a cause of action on account of a representation that the party did not itself make.  *Yong Wong Park v. Atty. Gen. of U.S.*, 472 F.3d 66, 73 (3d Cir. 2006) ("[A]sserting inconsistent positions does not trigger the application of judicial estoppel unless *intentional self-contradiction* is used as a means of obtaining unfair advantage." (emphasis added)); *Pennycuff v. Fentress County Bd. of Educ.*, 404 F.3d 447, 452 (6th Cir. 2005) ("Judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by that *same party* in an earlier proceeding." (emphasis added)).

Finally, in alleging that "representations affirmatively made to the Bankruptcy Court … that the amount of the potential recovery by the Trust, if any, was in the range of $8 to $24

million" (Appellant's Br. at 19), Onex American severely perverts the statements of the

Committee.  The Committee fully explained that:

> [t]he value of the claims against Onex and the Onex Affiliates is difficult to
> ascertain with any reasonably certainty because of the amount of discovery and
> investigation yet to be completed. *Based upon the limited discovery* obtained to
> date, the Creditors' Committee estimates that the gross amount of claims against
> Onex and the Onex Affiliates could range from approximately $8 million to
> approximately $24 million.  *Of course, in light of the uncertainty and risks
> associated with litigation, the amount of the actual recovery on such claims is
> uncertain.* Those Class 9 General Unsecured Creditors (other than a holder of an
> Insured Claim and a holder of a Senior Lender Deficiency Claim) who elect to
> fund the Trust will share in the recovery, if any, resulting from the contemplated
> litigation.
>
> …
>
> Ultimately, the Litigation Trustee will have to further review the potential causes
> of action and decide whether to commence litigation against Onex.

(App. 3 at 98-99, 103 (emphasis added).)  Thus, the Committee repeatedly warned that it was

providing only a rough estimate of the expected recovery based upon its limited discovery and

that further investigation would be required by the Trustee.  Now Onex American, a party which

(when it was still actually in existence) was intimately involved with the fraudulent LBOs and

thus, possessed infinitely more information regarding its own potential liability than the

Committee could ever have had, argues that it was deceived.  The Committee simply did not

make the representations that Onex American claims were made, and the representations it did

make clearly indicate that the Assigned Causes of Action had an uncertain value.  Such

representations were true and do not provide any basis to limit the Trustee's recovery in the

Assigned Causes of Action.  *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (for

judicial estoppel to apply "a party's later position must be 'clearly inconsistent' with its earlier

position.")

**E.    The Bankruptcy Court Did Not Abuse Its Discretion When It Considered The Availability Of Relief In The District Court And The Effect Reopening The Case Would Have On The District Court Action.**

Even if Onex American had presented a ripe issue, the Bankruptcy Court did not abuse its discretion when it refused to reopen the bankruptcy case, and appropriately deferred to the District Court based on the availability of relief in that court and the interference a decision on the merits would have on the District Court Action. As the Third Circuit has explained, "[i]n exercising its discretion to reopen, a bankruptcy court should consider whether similar proceedings are already pending in [another] court." *Zinchiak*, 406 F.3d at 225; s*ee also In re Antonious*, 373 B.R. at 405 ("[T]he court should consider … whether a non-bankruptcy forum … has the ability to determine the dispute to be posed by the debtor were the case reopened.").

While the Bankruptcy Court should also consider "which forum - [non-bankruptcy] court or bankruptcy court - is most appropriate to adjudicate the issues raised by a motion to reopen," *In re Zinchiak*, 406 F.3d at 225, "[t]he availability of relief in an alternative forum is a permissible factor on which to base a decision not to reopen a closed bankruptcy case" even where adjudication requires the interpretation of a plan of reorganization or confirmation order. *Apex Oil,* 406 F.3d at 542 . Indeed, a movant fails to make the required showing of "cause" under 11 U.S.C. § 350(b) where the purpose of reopening the case is to provide the movant with the choice between two courts of competent jurisdiction to determine an underlying issue. *E.g.*, *Id.* at 541 ("[A] … desire to adjudicate an issue in bankruptcy court, rather than in an alternative forum, constitutes insufficient grounds on which to reopen a bankruptcy case."); *In re Underwood*, 299 B.R. 471, 478-79 (Bankr. S.D. Ohio 2003) ("There is no 'cause' to reopen this proceeding … because … all relief which may be accorded to the Debtor is equally available in the state court, where the Debtor and United originally chose to litigate these issues and raise additional non-bankruptcy causes of action and defenses."); *In re Dabbs*, 72 B.R. 73, 75 (Bankr.

N.D. Ala. 1987); *In re Carter*, 38 B.R. 636, 638 (Bankr. Conn. 1984); *In re Iannacone*, 21 B.R. 153, 155 (Bankr. D. Mass. 1982); *In re McNeil*, 13 B.R. 743, 747-48 (Bankr. S.D.N.Y. 1981).

Accordingly, in *Apex Oil*, the Eighth Circuit held that a bankruptcy court, in denying a reorganized debtor's motion to reopen a bankruptcy case to enforce the provisions of a bankruptcy plan, did not abuse its discretion where it based its decision on the availability of relief in an alternative forum. *Apex Oil*, 406 F.3d at 541-42. There, the reorganized debtor was discharged of all claims arising before the plan's confirmation date. *Id.* at 540. After its bankruptcy case was closed, the reorganized debtor was sued in a state court on nuisance, trespass and strict liability allegations. *Id.* at 540-41. The reorganized debtor removed the case to federal district court and, in its answer to the complaint, argued that the claims against it were discharged by its bankruptcy plan. *Id.* at 541. While the case was pending before the federal district court, the reorganized debtor filed in the bankruptcy court a motion to reopen its case and enforce the plan's discharge injunction. *Id.* The bankruptcy court denied the motion based upon the availability of relief in an alternate forum. *Id.* at 542. On subsequent appeals, both a district court and the Eighth Circuit affirmed this decision. *Id.* at 541, 543.

As the Eighth Circuit made clear, although a bankruptcy court may be "in the best position to interpret its own orders," that fact alone does not require a bankruptcy court to reopen a case every time a confirmation order or plan needs interpretation. *Id.* at 542. The Eighth Circuit held that, because (a) the bankruptcy court in *Apex* had no familiarity with the plaintiff or their claims, (b) the plaintiff's claims were already being adjudicated in another forum, and (c) that other forum could afford the relief the reorganized debtor sought, the bankruptcy court did not abuse its discretion in refusing to reopen the bankruptcy case. *Id.*

Like the court in *Apex*, the Bankruptcy Court has almost no familiarity with the parties or the claims at issue in the District Court Action. Like the court in *Apex*, the claims here are already being adjudicated in the District Court Action (Trustee's App. 2 at 2 ("The Litigation is proceeding and the District Court issued a lengthy opinion on motions to dismiss whereby the District Court dismissed some counts and sustained others.").) And, similar to *Apex*, Onex American has already asked the non-bankruptcy court to consider the same basic issue it now asks the Bankruptcy Court to consider. (Id. at 3 ("Onex already raised the ability of the Trust to seek an amount in excess of the dollar amount of the Trust beneficiaries' claims with the District Court.".) Indeed, the Bankruptcy Court's deference to the District Court in Georgia is even more compelling in this case given the fact that the District Court already has exercised its discretion and decided that these matters should be addressed at a later point in the litigation. (Trustee's App. 2 at 2.) As the Bankruptcy Court noted:

> The Litigation is proceeding and the District Court issued a lengthy opinion on motions to dismiss whereby the District Court dismissed some counts and sustained others. In connection with the motions to dismiss, Onex and the other defendants contested the Trust's ability to recover in excess of $600 million on behalf of creditors holding approximately $12 million in claims. The District Court ruled that (District Court Order at 15):
>
>> Finally, Defendants [Onex] ask this court to rule that [the Trust] is entitled only to recover the amount of injury to the creditors who opted into the [Trust]. This court declines to narrow the case on the issue of recovery at this time. Whether, under bankruptcy principles, a plaintiff representing a class of unsecured creditors has or does not have the right to recover more than the amount of the actual damages of those unsecured creditors is an issue that is better determined after liability issues.

(Trustee's App. at 2.)

It is clear that Onex American is attempting to pick and choose the forum it feels will give it the ruling it wants. In its opening brief, Onex American states that the Bankruptcy Court is the best (and in its opinion apparently, now somewhat belatedly, the only) court for

interpreting the Plan.  (Appellant Br. 21.)   However, on numerous prior occasions Onex American and its affiliates have found the District Court in Georgia to be the best, or at least an appropriate, forum in which to litigate the meaning of the Plan.  (App. 13 at 8, 12-14, 16-18, 55, 63, 70.)   Indeed, while the District Court chose to defer the issue of limiting the Trustee's recovery until after liability issues are determined, in that same order it sufficiently discussed its interpretation of the Plan to give Onex American cause to shop for a different court that might give it more favorable decisions.  The District Court has already correctly noted that

> the provisions of the confirmed [Plan] are *res judicata* on the current action.
> Further, Defendants cannot object to the terms of the Plan such arguments are
> deemed waived if not raised in objection of the confirmation. … Here, the Plan
> granted to the Litigation Trust the right to bring all assigned causes of action."

(App. 13 at 12-13 (citations omitted.).)   Furthermore, the District Court declared that "[a]ny amounts recovered by the Plaintiff will be distributed to the beneficiaries of the Trust" (*id.* at 14), and that "[b]y virtue of the [Plan], the Litigation trust had the right to bring all of the Debtors' 'assigned causes of action.'"  (*Id*. at 70.)   Given the fact that the Plan does not contain any limitation on the Trust's recovery from the Assigned Causes of Action, it appears highly unlikely that Onex American would receive a favorable ruling from the District Court.  Because Onex American itself asked the District Court in Georgia to interpret the Plan and in many cases benefited from the District Court's decisions, this Court should not permit Onex American to now select a new forum that it hopes will be more favorable on this issue.

Onex American has failed to show that the Bankruptcy Court abused its discretion in considering the effect its decisions would have on the District Court Action.   Given the similarities between this case and other similar cases including *Apex*, Onex American cannot meet its burden of showing that "no reasonable person would adopt the [Bankruptcy Court's] view." *Stecyk*, 295 F.3d at 412.  Accordingly, regardless of whether this Court finds that Onex

American's motions presented a ripe issue, this Court should uphold the Bankruptcy Court's reasoned decision to defer to the District Court in Georgia.

## III.    ONEX AMERICAN HAS FAILED TO SHOW THAT A RECOVERY EXCEEDING THE AMOUNT OF THE TRUST BENEFICIARIES' CLAIMS WOULD VIOLATE ONEX AMERICAN'S RIGHTS.

Finally, while the Bankruptcy Court did not abuse its discretion when it held that, under Onex American' articulation of the absolute priority rule, Onex American's claim was not ripe for review, an additional ground for affirmance is that Onex American's articulation of the absolute priority rule is wrong and it has waived its arguments by not objecting to the Plan.

### A.    Onex American Waived Any Challenge To The Unambiguous And Uncapped Assignment Of The Assigned Causes Of Action.

By failing to object to confirmation of the Plan, Onex American has waived any rights it may have had to challenge the Plan based upon the absolute priority rule. As discussed above, the absolute priority rule is only a factual finding required to confirm a cram-down plan. As 11 U.S.C. § 1129(b) states:

> [I]if all of the applicable requirements [for confirmation] other than [the requirement that each impaired class has accepted the plan] are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

This factual finding of fair and equitable treatment, which encompasses the absolute priority rule, *see* 11 U.S.C. § 1129(b), need only be proved by a preponderance of the evidence. *In re Armstrong World Industries, Inc.*, 348 B.R. 111, 120 (D. Del. 2006); *In the Matter of Briscoe Enterprises, Ltd., II*, 994 F.2d 1160, 1165 (5th Cir. 1993); *Corestates Bank, N.A. v. United Chemical Technologies, Inc.*, 202 B.R. 33, 45 (E.D. Pa. 1996). Significantly, in this case the Bankruptcy Court *found* the requirements of the absolute priority rule were met; it did not *order* that the Plan comply with the rule. (Confirmation Order ¶ S (paragraphs containing factual

findings identified by letters, *see* Confirmation Order p. 6, the Bankruptcy Court's orders are contained in paragraphs identified by numbers, *see* Confirmation Order p. 20).)

If Onex American believed that the Plan would violate the absolute priority rule in the event that the Trustee ultimately collects more than the amount of the Trust Beneficiaries' pre-bankruptcy claims, Onex American should have objected to the confirmation of the Plan. Having failed to raise any objection to the Plan at the Confirmation Hearing or the facts supporting the Bankruptcy Court's finding that the absolute priority rule was satisfied, or to appeal the Confirmation Order, Onex American has waived any right it might have previously held to challenge the Plan and its current challenge is barred by the doctrine of *res judicata*. *Miller v. United States,* 363 F.3d 999, 1004 (9th Cir. 2004).

Indeed, the case law is well established that "[i]f a [party] fails to protect its interests by timely objecting to a plan or appealing the confirmation order, the [party] is foreclosed from challenging any of the plan's provisions, even if such a provision is inconsistent with the Code." *Miller,* 363 F.3d at 1004 (quoting *In re Pardee*, 193 F.3d 1083, 1086 (9th Cir. 1999)); *In re Andersen*, 179 F.3d 1253, 1258-59 (10th Cir. 1999) ("Absent timely appeal, the confirmed plan is *res judicata* and its terms are not subject to collateral attack. … Although the provision at issue did not comply with the [Bankruptcy] Code, it is now too late for [a party in interest] to make the argument that [it earlier] failed to timely raise."); *Donaldson v. Bernstein*, 104 F.3d 547, 554 (3rd Cir. 1997) ("It is true that 'a confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation.'" (quoting *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989)); *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996) ("[F]ederal courts have consistently applied *res judicata* principles to bar a party from asserting a legal position after failing, without reason, to object to the relevant proposed

plan of reorganization or to appeal the confirmation order."); *see also In re Travelstead*, 227 B.R. 638, 653 (D. Md. 1998) (holding that party in interest had waived all objections to chapter 11 plan of confirmation on the basis of the absolute priority rule by failing to raise them prior to confirmation of the plan).

In this case there is simply no excuse for Onex American's lack of objection as it was intimately involved with these cases, the Plan, and the formation of the Trust. Onex Corporation filed an objection to an early version of the Disclosure Statement (Docket No. 427), and was permitted to include five pages of comments in the Disclosure Statement specifically dealing with the formation of the Trust and the Assigned Causes of Action, which is a greater volume than the Debtors or Committee devoted to the subject. (Disclosure Statement pp. 5, 6, 99-102). Not once did Onex Corporation (or Onex American for that matter) argue that the Assigned Causes of Action must be capped in order to comply with the absolute priority rule. Given Onex American's intimate involvement in the bankruptcy and its failure to object to or appeal from the confirmation of the Plan, Onex American has waived any challenge to the Plan's propriety and *res judicata* prevents Onex American's current collateral attack on the Plan and the Confirmation Order.

**B.     Onex American Has Failed To Establish That The Absolute Priority Rule Was Violated.**

The absolute priority rule deals with the propriety and value of distributions made under a plan. In this case, each of the creditors that opted into the Trust has already received their distributions under the Plan -- a distribution of a percentage of the beneficial ownership in the Trust. (*See generally*, Plan § 3.10.) *Cf. In re Commercial Loan Corp.*, No. 06 A 1530, 2007 WL 756382, at * 5 (March 14, 2007) (holding that once an estate's asset is transferred to a post-confirmation trust, that asset is no longer property of the estate and subject to the jurisdiction of

the bankruptcy court.)  Under the Code, that distribution had to be valued "as of the effective date of the plan," and not at some later future date when the Trust might recover from the defendants in the District Court Action.  11 U.S.C. §§ 1129(b)(2)(B)(i) & (2)(C)(i); *see also* H.R. Rep. No. 95-595, 95th Cong., 1st Sess., at 415-16 (1997) (advising that to comply with section 1129(b) of the Bankruptcy Code "the holder of an unsecured claim is not permitted to receive property of a value as of the effective date of the plan on account of such claim that is greater than the allowed amount of such claim").

Indeed, requiring that distributions under a plan be valued as of the effective date keeps the bankruptcy court from having to value property distributed to creditors throughout the property's entire future existence and recognizes that the value of some types of property will appreciate or fluctuate in value.  For example, many chapter 11 plans, including this Plan, result in new equity being issued to senior classes.  Onex American's method of waiting until property appreciates and then claiming such appreciation causes the plan, post-effective date, to violate the absolute-priority rule would make such stock plans unworkable.  Indeed, granting the motions in this case could result in Onex American (or unsecured creditors) having the right to demand that the Plan's Class 6 Claimants return a portion of their stock should its value exceed the amount of the Class 6 Claimants' allowed claims.

Nowhere in its motion to enforce the Plan did Onex American attempt to value the Assigned Causes of Action *as of the effective date* of the Plan.  To undertake such a valuation requires the recognition that the Assigned Causes of Action were (and currently are) merely unliquidated claims entirely dependant upon a future successful judgment or settlement and collection and, as such, are contingent assets.  In determining the present value of contingent assets, like the valuation of contingent liabilities, the potential future asset must be discounted to

account for the possibility that the future contingency may never occur. *In re Total Technical Services, Inc*., 150 B.R. 893, 900-01 (Bankr. D. Del. 1993) ("The court will determine the fair value of Services' assets within a realistic framework, and a contingent liability or asset will be discounted according to the validity and collectibility of the liability."); *see also In re Xonics Photochemical, Inc.,* 841 F.2d 198, 200 (7th Cir.1988) ("To value the contingent liability it is necessary to discount it by the probability that the contingency will occur and the liability become real.")

In valuing causes of action, courts must consider the likelihood of success, the amount of the potential judgment if successful, and the collectibility of such a judgment. *See, e.g., In re Apex Automotive Warehouse, L.P*., 238 B.R. 758, 771-72 (Bankr. N.D. Ill. 1999). Furthermore, in valuing property as of a date that has already occurred, courts should not use hindsight because information unknown until later would not affect a property's value on the valuation date. *In re WRT Energy Corp.*, 282 B.R. 343, 400 (Bankr. W.D. La. 2001) ("The court further concludes that this evaluation must be made as of the date of the valuation and without the benefit of hindsight.").

In this case, as the Bankruptcy Court found in the Confirmation Order, the Plan was fair and equitable to rejecting classes of interest holders as required by 11 U.S.C. § 1129(b)(1). To the extent that such a holding required the Court implicitly to find that the transfer of the Assigned Causes of Action would not result in unsecured creditors receiving, as of the Plan's effective date, more than 100% of the value of their claims as Onex American argued (App. 14 at 19-20), such a holding was well supported given the unknown scope of the potential causes of action against Onex Corporation and its affiliates.

In fact, according to Onex Corporation's own representations included in the Disclosure Statement, the Assigned Causes of Action were worthless on the Plan's effective date. Onex Corporation stated:

> (i) Onex adamantly denies any and all allegations that it is liable in any way whatsoever to the [Magnatrax] Debtors' estates or to creditors or interest holders in the [Magnatrax] Debtors' chapter 11 cases, (ii) Onex declines to provide any form of payment under the Plan or otherwise, in respect of any such purported claims, (iii) Onex reiterates that it will vigorously defend against any claims by the Creditors' Committee (or anyone else) arising out of the unfortunate economic circumstances that led to these chapter 11 filings, and (iv) Onex expressly reserves all of its rights, claims and defenses in connection with any such purported claims, including its right to seek affirmative relief against any person that asserts claims that lack factual basis. *For these reasons, no value can he ascribed to the claims asserted by the Creditors' Committee, or to the Litigation Trust or its contemplated recoveries.*
>
> …
>
> *There is no basis for any recovery against Onex or the Onex Affiliates*, let alone the $8 million to $24 million range suggested by the Creditors' Committee.

(App. 3 at 99-102) (emphasis added). Furthermore, Onex Corporation specifically refuted several allegations that might have given rise to liability. (*Id.*)

Though the Committee took a more measured approach to the valuation of the Assigned Causes of Action, it still recognized their contingent nature. Its statement included in the Disclosure Statement read:

> The value of the claims against Onex and the Onex Affiliates is difficult to ascertain with any reasonably certainty because of the amount of discovery and investigation yet to be completed. *Based upon the limited discovery* obtained to date, the Creditors' Committee estimates that the gross amount of claims against Onex and the Onex Affiliates could range from approximately $8 million to approximately $24 million. Of course, in light of the uncertainty and risks associated with litigation, the amount of the actual recovery on such claims is uncertain. Those Class 9 General Unsecured Creditors (other than a holder of an Insured Claim and a holder of a Senior Lender Deficiency Claim) who elect to fund the Trust will share in the recovery, if any, resulting from the contemplated litigation.
>
> …

Ultimately, the Litigation Trustee will have to further review the potential causes of action and decide whether to commence litigation against Onex.

(App. 3 at 98-99, 103 (emphasis added).)

In light of Onex Corporation's representation that the Assigned Causes of Action were worthless, and its intent to doggedly defend itself, the Bankruptcy Court was justified in finding a lower probability, as of the Plan's effective date, of a recovery on the Assigned Causes of Action. Accordingly, the Bankruptcy Court had ample support to find, by a preponderance of the evidence, *In re Armstrong World Industries, Inc.*, 348 B.R. 111, 120 (D. Del. 2006), that, given the chance of recovery, the value of the Assigned Causes of Action was such that no unsecured creditor was receiving more than 100% of the value of its claim as of the Plan's effective date by virtue of such creditor's receipt of a beneficial interest in the Trust.

In its Motion to Enforce, Onex American never even attempted to value the distribution to the Trust Beneficiaries as of the effective date of the Plan based upon the information known at the time of the confirmation of the Plan, and as such it has utterly failed to carry its burden of showing the absolute priority rule was violated. Accordingly, this Court should reaffirm the Bankruptcy Court's denial of Onex American's motion to reopen the bankruptcy cases.

(remainder of page intentionally left blank)

## CONCLUSION

For all of the foregoing reasons, the Trustee respectfully requests that the Court dismiss Onex American's appeal and grant such other relief as may be just.

DATED:  November 16, 2007                CROSS & SIMON LLC


By:    /s/ Christopher P. Simon
      Christopher P. Simon (No. 3697)
      913 North Market Street, 11th Floor
      P.O. Box 1380
      Wilmington, DE 19899-1380
      Telephone: (302) 777-4200
      Facsimile: (302) 777-4224

      -and-

      Catherine L. Steege, Esquire
      Joel T. Pelz, Esquire
      Andrew Nicoll, Esquire
      JENNER & BLOCK LLP
      330 N. Wabash Avenue
      Chicago, IL 60611
      Telephone: (312) 222-9350

      -and-

      Peter W. Ito, Esquire
      BAKER & HOSTETLER LLP
      303 East 17th Avenue, Suite 1100
      Denver, Colorado 80203
      Telephone: (303) 861-0600

      Counsel for Richard M Kipperman,
      Trustee for the Magnatrax Litigation Trust

## <u>CERTIFICATE OF SERVICE</u>

I, Christopher P. Simon, hereby certify that on November 16, 2006, I caused to be served

a copy of the **Answering Brief of Appellee Richard M Kipperman** upon the attached service

list as indicated.

US Trustee
Richard L. Schepacarter
Office of the United States Trustee
844 King Street, Suite 2313
Lock Box 35
Wilmington, DE 19801
*Hand Delivery*

Jeff Waxman, Esq.
Cozen O'Connor, PC
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
*Hand Delivery*

Alan W. Kornberg, Esquire
Maria T. Vullo, Esquire
Paul Weiss Rifkind Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019-6064
(Onex Corporation)
*First Class Mail*

Matthew Lunn, Esq.
Joel A. Waite, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Bldg., 17th Floor
1000 West Street
Wilmington, DE 19801
(Co-Counsel to Debtors)
*Hand Delivery*

Andrew Kress, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022
*First Class Mail*

_/s/ Christopher P. Simon_
Christopher P. Simon (No. 3697)