**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) |
| ONEX AMERICAN HOLDINGS, LLC, | ) |
| | ) Civil Action No. 07-CV-263 (SLR) |
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| RICHARD M. KIPPERMAN, | ) |
| | ) |
| Appellee. | ) |
| | ) |
| In re: | ) Chapter 11 |
| | ) Case No. 03-11402 (KG) |
| MAGNATRAX CORPORATION, | ) |
| | ) |
| Reorganized Debtor. | ) |
| | ) |

**REPLY OF ONEX CORPORATION TO APPELLEE'S RESPONSE IN
OPPOSITION TO THE MOTION OF ONEX CORPORATION TO INTERVENE**

      Onex Corporation ("Onex Corp."), by and through its undersigned counsel, Cozen

O'Connor and Paul, Weiss, Rifkind, Wharton & Garrison LLP, respectfully replies to the

Response (the "Response") of Richard M. Kipperman, trustee (the "Trustee") of the Magnatrax

Litigation Trust, in opposition to the Motion (the "Motion")[1] of Onex Corp. to intervene as an

appellant in the above-captioned appeal.

---

[1]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

## PRELIMINARY STATEMENT

Onex Corp. seeks to intervene in this Appeal to eliminate any procedural issue[2] that would impede this Court's review of the important substantive issues raised. Onex Corp. indisputably has standing to intervene in the Appeal. Its intervention would promote judicial efficiency by avoiding the possibility of a separate action by Onex Corp. based on the same facts and issues underlying the Appeal. Finally, intervention would cause no prejudice to the Trustee because it would not impact any of the substantive matters raised in the Appeal. While the Trustee apparently would prefer to avoid this Court's scrutiny of his ongoing violation of the Plan, the Confirmation Order, and the Bankruptcy Code by focusing on procedural distractions, this Court should not be distracted. Onex Corp.'s rights, like those of Onex Holdings, are being violated now; it should be allowed to intervene to protect them.

## ARGUMENT

### A.    Onex Corp. May Intervene as a "Person Aggrieved."

1.    The Trustee did not – and cannot – dispute that Onex Corp. has standing to intervene in the above-captioned appeal because it is a "person aggrieved." *See Derivium* v. *United States Trustee,* No. 05-10845, 2006 WL 1317021 (S.D.N.Y. May 12, 2006). The Bankruptcy Court's Order denying the Motion to Reopen affects Onex Corp.'s pecuniary interests by forcing it, along with the other defendants in the Georgia Action, to continue to defend a $600 million lawsuit brought in violation of Onex Corp.'s rights under the Plan. This alone is sufficient basis for Onex Corp. to intervene and Bankruptcy Rule 2018 is of no moment.

---

[2]    The Trustee repeats his assertion in his Response that Onex Holdings lacks standing because it was dissolved in 2002. (Resp. 1-2.) However, he remains unable to explain why he chose to sue Onex Holdings for $600 million three years *after* it was dissolved. It is apparent the Trustee seeks to recover from a defendant he believes cannot properly defend itself. This Court should end this charade.

*See Int'l Trade Admin.* v. *Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747 (2d Cir. 1991) (Bankruptcy Rule 2018 "does not limit the rights of a 'person aggrieved' to be heard. Rather, it provides a formal mechanism that expands the right to be heard to a wider class than those who qualify under the 'person aggrieved' standard.").

      2.     Instead, the Trustee argues Onex Corp. lacks standing to file an appeal and therefore the Motion should be denied. This argument is as irrelevant as it is illogical: Onex Corp. seeks to intervene in the properly filed appeal of Onex Holdings, not to pursue its own appeal. Onex. Corp.'s ability to file its own appeal is not before this Court. Accordingly, the cases relied upon by the Trustee are inapposite. *See, e.g., Former Frontier Pilot Litigation Steering Committee* v. *Frontier Airlines, Inc.* (*In re Frontier Airlines, Inc.*), 108 B.R. 277, 278-79 (D. Colo. 1989) (denying joinder pursuant to Federal Rule of Civil Procedure 19 because such rule does not apply to bankruptcy appeals); *In re Abdallah*, 778 F.2d 75, 77 (1st Cir. 1985) (appellants sought separate appeal, not intervention in a properly filed pending appeal).

      3.     The Trustee's attempt to distinguish *Derivium* is without moment. As the Trustee points out, the *Derivium* court recognized that the movants did not timely appeal the order converting the case because they lacked notice of its potential effect on their tax liability. *Derivium*, 2006 WL 1317021 at * 6. However, this was not dispositive to the court's holding. To the contrary, the movants' standing as persons aggrieved provided the basis for the court's granting relief. *Id.* at * 7. Similarly, Onex Corp.'s failure to file a separate appeal has no impact on its ability to intervene here.

**B.    <u>Onex Corp.'s Intervention Will Not Prejudice<br>the Trustee and Will Promote Judicial Efficiency.</u>**

      4.     The Trustee concedes – as he must – that this Court has discretion to grant the Motion. (*See* Resp. 8.) And allowing Onex Corp. to intervene makes sense here. It will

3

cause no prejudice to the Trustee.[3]  It will not change any of the substantive issues before this

Court.  Onex Corp., which, like Onex Holdings, was a shareholder of the Debtors,[4] has

substantially similar interests in this Appeal and substantially similar rights under the Plan, the

Confirmation Order and the Bankruptcy Code as Onex Holdings.  Moreover, Onex Corp.,

represented by the same counsel, would likely pursue similar arguments as Onex Holdings in the

Appeal.  Courts have recognized that intervention is appropriate where the facts and legal issues

involved are similar.  *Ross* v. *Margolies*, Nos. 89-6242A, 89-6587A, 1995 WL 33631, at *15

(S.D.N.Y. Jan. 30, 1995) ("'The rule of permissive intervention was intended to promote judicial

economy by preventing multiple lawsuits where common questions of law or fact are

involved.'") (quoting *Ceribelli* v. *Elghanayan*, 91 Civ. 3337, 1994 WL 529853, at *2 (S.D.N.Y.

Sept. 26, 1994)).

      5.    Indeed, Onex Corp. intervened solely to facilitate the Court's ruling on the

substance of the Appeal in response to the Trustee's continued assertion that Onex Holdings

lacks standing to pursue it.  While Onex Corp. believes Onex Holdings has sufficient standing to

pursue the Appeal (and the Trustee apparently agrees since he continues to pursue a recovery

against Onex Holdings in the Georgia Action), Onex Corp. seeks to end the Trustee's elevation

---

[3]    The Trustee's accusation that Onex Corp. "chose to sit on the sidelines while the Trustee has devoted considerable time to challenging Onex American's standing to appeal" misstates the record.  (*See* Resp. 2-3.)  Onex Holdings has demonstrated its standing throughout the Appeal.  (*See* App. Rep. Br. at 9-10 (stating Onex Holdings' pecuniary interest in the Appeal and repudiating the Trustee's belief that he can sue Onex Holdings, but Onex Holdings cannot defend its rights); App. Br. 5, n.4 (noting the equity interests of, among others, Onex Holdings and Onex Corp. in the Debtors)).

[4]    Attached as Exhibit 1 is the relevant excerpts from the Debtors' statement of financial affairs, which was filed in the Bankruptcy Court, evidencing Onex Corp.'s stock interest in Magnatrax Corporation, one of the Debtors.

Doc#: US1:5121867v2

of form over substance in the Appeal to delay vindication of Onex Corp.'s and Onex Holdings' substantive rights.

6.    Moreover, if the Appeal were dismissed for Onex Holdings' lack of standing, Onex Corp. would be forced to initiate its own proceedings to pursue its rights, a result that would only delay resolution of the underlying issues and create unnecessary additional litigation and expense.  Courts prefer to allow intervention rather than waste judicial resources. *See Ross*, Nos. 89-6242A, 89-6587A, 1995 WL 33631, at *14 (court allowed intervention where claim would be lost for lack of standing rather than forcing intervening party to file separate complaint based on same basic facts and legal theories),  *Mission Hills Condominium Ass'n* v. *Corley,* 570 F.Supp 453, 462 (N.D. Ill. 1983) (same).  Accordingly, this Court should choose the most efficient non-prejudicial path and grant the Motion.

5

WHEREFORE, for the reasons stated above, Onex Corp. respectfully requests that the Court (i) grant the Motion; (ii) overrule the Response; and (iii) grant Onex Holdings such other relief as the Court deems just and proper.

Dated: December 17, 2007
      Wilmington, Delaware

COZEN O'CONNOR

By: _____
     Jeffrey R. Waxman (4159)
     Mark E. Felger (3919)
     Chase Manhattan Centre
     1201 N. Market Street, Suite 1400
     Wilmington, Delaware 19801
     Telephone: (302) 295-2000

     -and-

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

     Alan W. Kornberg
     Maria T. Vullo
     1285 Avenue of the Americas
     New York, New York 10019-6064
     Telephone: (212) 373-3000

Counsel for Onex Corporation, Intervenor

# EXHIBIT 1

Form 7. STATEMENT OF FINANCIAL AFFAIRS

OFFICIAL FORM 7
(9/00)

## UNITED STATES BANKRUPTCY COURT
District of Delaware

In Re:  __MAGNATRAX Corporation__            Case No. __03-11402__
(Name)                                            (If known)

## STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs.

Questions 1–18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19–25. **If the answer to an applicable question is "NONE", mark the box labeled "None".** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

## DEFINITIONS

"*In business.*" A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within the six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed.

"*Insider.*" The term "insider" includes but is not limited: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

1.    **Income from employment or operation of business**

None
☒         State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

30690356.DOC

None

b.  If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE OF STOCK OWNERSHIP |
|---|---|---|
| Allen M. Capsuto 1220 Old Alpharetta Rd, Bld. 310 Alpharetta, GA 30005 | Executive VP & CFO Board Member | 0% |
| Bruce M. Zorich 1220 Old Alpharetta Rd, Bld. 310 Alpharetta, GA 30005 | CEO & President Board Member | 0.01 Shares of Class"A" Stock 0.0000% of Class A Outstanding |
| Wes Brooker 1220 Old Alpharetta Rd, Bld. 310 Alpharetta, GA 30005 | Sr. Vice President | 0.3385 Shares of Class A Stock 0.0001% of Class A Outstanding 0.0003 Shares of Class C Stock 0.0667% of Class C Outstanding |
| Anne M. Savage 1220 Old Alpharetta Rd, Bld. 310 Alpharetta, GA 30005 | VP-Finance | 0.0277 Shares of Class A Stock 0.0000% of Class A Outstanding; 0.00002 Shares of Class C Stock 0.0044% of Class C Outstanding |
| Peggy S. Woodham 1220 Old Alpharetta Rd, Bld. 310 Alpharetta, GA 30005 | VP- Admin & HR Corporate Secretary | 0% |
| Mark L. Hilson 1220 Old Alpharetta Rd, Bld. 310 Alpharetta, GA 30005 | VP & Assistant Secretary Board Member | 0% |
| Nigel S. Wright 1220 Old Alpharetta Rd, Bld. 310 Alpharetta, GA 30005 | VP & Assistant Secretary Board Member | 0% |
| Michael Z. Kay 1220 Old Alpharetta Rd, Bld. 310 Alpharetta, GA 30005 | Chairman of the Board | 0.1923 Shares of Class A Stock 0.0000% of Class A Outstanding; 0.0002 Shares of Class C Stock 0.0445% of Class C Outstanding |
| Onex Corporation 161 Bay Street, Toronto Canada | Shareholder | 500253.4166 Shares Class A 99.9779% of Class A Outstanding 422974 Shares Class B 84.5664% of Class B Outstanding 0.4254 Shares Class C 94.6174% of Class C Outstanding |

*[If completed by an individual or individual and spouse]*

      I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs of and any attachments thereto and that they are true and correct.

Date _____            Signature _____
                             of Debtor

Date _____            Signature _____
                             of Joint Debtor
                             (if any)

---

*[If completed on behalf of a partnership or corporation]*

      I, declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs of **MAGNATRAX Corporation** and any attachments thereto and that they are true and correct to the best of my knowledge, information and belief.

Date _July 16, 2003_         Signature _____

                             **Allen M. Capsuto Executive Vice President
and Chief Financial Officer**
                             Print Name and Title

[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. § 152 and 3571*

---

Not Reported in F.Supp.                                                                 Page 1
Not Reported in F.Supp., 1995 WL 33631 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,642
(Cite as: Not Reported in F.Supp.)

▷In re Faleck & Margolies, Ltd.
S.D.N.Y.,1995.

United States District Court, S.D. New York.
In re FALECK & MARGOLIES, LTD., Faleck &
Margolies, Inc., and TM Industries, Inc., Debtors.
Steven ROSS, et al., Plaintiffs,
v.
Gertrude MARGOLIES, et al., Defendants,
andAllen Samuel Manus, et al., Additional
Defendants on Counterclaims.
Steven ROSS, et al., Plaintiffs,
v.
PATRUSKY, MINTZ & SEMEL and Gordon B.
Lee, Defendants.
PATRUSKY, MINTZ & SEMEL, Third-Party
Plaintiff,
v.
Gertrude MARGOLIES, et al., Third-Party
Defendants.
Gordon B. LEE, Third-Party Plaintiff,
v.
Gertrude MARGOLIES, et al., Third-Party
Defendants.
Bankruptcy Nos. 89 B11140 (PBA), 89 B11139
(PBA), 89 B11138 (PBA)
Adv. Nos. 89-6424A (PBA), 89-6587A(PBA).
Nos. 89 Civ. 8548 (SWK) and 90 Civ. 1356 (SWK).

Jan. 30, 1995.

Deutsch and Frey by Vincent R. Coffey, New York
City, for plaintiffs Minority Shareholders of Faleck &
Margolies, Ltd., Faleck & Margolies, Inc. and TM
Industries, Inc. (except Intern. Trust Co. of Bermuda)
and proposed intervenor the Official Committee of
Unsecured Creditors.
Lord Day & Lord, Barrett, Smith by Michael J.
Murphey, New York City, for plaintiff Intern. Trust
Co. of Bermuda.
Kornstein Veisz & Wexler by Daniel J. Kornstein,
New York City, for plaintiff Frederick M. Glass.
Hall, Dickler, Lawler, Kent & Friedman by Peter
Raymond, New York City, for Frederick M. Glass,
Jr., as Executor of the Estate of Frederick M. Glass,
deceased.
Fried, Frank, Harris, Shriver & Jacobson by Richard
M. Michaelson, New York City, for defendants
Gertrude Margolies, individually and as

representative of the Estate of Abraham Margolies,
deceased, Martin Klein and Judith Klein.
Stroock & Stroock & Lavan by Brian Cogan, Alan Z.
Yudkowsky, New York City, for defendant Gordon
B. Lee.
Wilson, Elser, Moskowitz, Edelman & Dicker by
Thomas R. Manisero, New York City, for defendant
and third-party plaintiff Patrusky, Mintz & Semel.
Davidoff & Malito by Mark E. Spund, New York
City, for third-party defendants Allen S. Manus,
Elizabeth Weiss Manus, S.O.K. Properties, Ltd.,
formerly known as FMG Telecomputer, Ltd., FMG
Telecomputer, Inc., Mega-Dial Communications, Inc.
and Arnold Feder.

MEMORANDUM AND ORDER
KRAM, District Judge.
*1 In these consolidated shareholders' derivative
suits, the following motions are presently before the
Court: (1) International Trust Company of Bermuda
("ITCOB") moves to withdraw as plaintiff in both
actions; (2) third-party defendants Allen Manus
("Manus"), Elizabeth Weiss Manus, S.O.K. Properties,
formerly known as FMG Telecomputer, Ltd., FMG
Telecomputer, Inc., Mega-Dial Communications, Inc.
("Mega-Dial") and Arnold Feder (collectively, the
"Manus Defendants") move to sever and dismiss the
third-party claims asserted against them in *Ross v.
Margolies,* 89 Civ. 8548 (SWK) (the "O & D
Action"); (3) defendants Patrusky, Mintz & Semel
("PM & S") and Gordon B. Lee ("Lee") (collectively,
the "Accountants") move to dismiss, or alternatively,
for partial summary judgment dismissing the
complaint in *Ross v. Patrusky, Mintz & Semel,* 90
Civ. 1356 (SWK) (the "Accountants Action") and
also move to compel plaintiffs to post security for
costs; (4) the Official Committee of Unsecured
Creditors (the "Committee") moves to intervene as a
plaintiff in the Accountants Action; [FN1] and (5)
plaintiffs move in both actions to substitute Frederick
M. Glass, Jr., as executor of the estate of Frederick
M. Glass, in place of Mr. Glass, who is now
deceased. The Court shall consider each of these
motions below.[FN2]

BACKGROUND

I. The Parties

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                     Page 2
Not Reported in F.Supp., 1995 WL 33631 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,642
**(Cite as: Not Reported in F.Supp.)**

### A. The O & D Action

Plaintiffs Steven Ross, Barry Peltz, Stu Pearlman, Sheldon Stone, Stuart Spilkowitz, Alan Minnaker, ITCOB and Frederick Glass (collectively, "plaintiffs") are minority shareholders of defendant Faleck & Margolies, Ltd. ("F & M Ltd."), formerly known as Mega-Dial. Defendants Faleck & Margolies, Inc. ("F & M, Inc.") and TM Industries, Inc. ("TMI") are wholly-owned subsidiaries of F & M, Ltd.[FN3] Defendants Margolies and Klein were both officers and directors of the F & M Companies and TMI. Maurice Goldstein ("Goldstein") was an employee of F & M, Inc. and Edward Miller ("Miller") was a controlling shareholder of F & M, Ltd. Margolies owned and controlled defendant International Contracting, Co., Inc. ("ICC") and owned a ten percent interest in defendant Wards Construction Co. ("Wards") during the relevant time period. Defendant Gertrude Margolies owned shares of stock in defendant 910 Fifth Avenue Tenants Corp ("910 Fifth Avenue") and held a proprietary lease to an apartment therein. In addition, the Margolies/Klein Defendants allegedly owned and controlled defendant Faleck & Margolies of Santo Domingo, S.A. ("F & M Santo"). The Margolies/Klein Defendants, together with Goldstein, also owned and controlled defendants Rogold, Inc. ("Rogold") and Designs by Maurice, Inc. ("Designs").

### B. The Accountants Action

Defendant PM & S is a firm of certified accountants and auditors that was retained by F & M, Inc. to perform professional accounting services for F & M, Inc. and TMI. Defendant Lee is a certified public accountant who reported on the 1985 Mega-Dial financial statements and also performed accounting services for F & M, Ltd. during the relevant time period.

### II. The O & D Action

**\*2** In 1985, Mega-Dial acquired from Margolies all of the outstanding shares of F & M, Inc. Margolies and Klein were elected as the sole directors of F & M, Inc., with Margolies serving as president and Klein serving as vice-president of the company.

Plaintiffs allege that the Margolies/Klein Defendants conspired to enrich themselves by engaging in a series of thefts of corporate properties. Specifically, plaintiffs allege that, in late 1985, Margolies caused F & M, Inc. to purchase his shares of ICC for the sum of $750,000. In 1986, Margolies caused this purchase to be rescinded but failed to refund the $750,000 purchase price. Similarly, in 1985, Margolies caused F & M, Inc. to agree to purchase Margolies' interest in Criterion Jewelry Castings, Inc. ("CCI") at an inflated price. In 1986, Margolies caused this transaction to be cancelled but failed to refund the purchase price.

The Margolies/Klein Defendants also made the following allegedly improper transactions: (1) Margolies and Judith Klein purchased a manufacturing plant without disclosing the purchase to the F & M Companies; (2) Margolies sold his interest in TMI to F & M, Inc. for an inflated value; (3) Margolies, Klein and Goldstein required F & M, Inc. to transact business with Rogold at inflated prices; (4) Margolies, Klein and Goldstein caused F & M, Inc. to transfer money and property to Designs for less than fair market value; (5) Margolies caused TMI to pay the moving and operating expenses of F & M Santo; (6) Margolies purchased shares in F & M, Ltd. and resold them to Miller; (7) F & M, Inc. sold approximately $4.5 million of jewelry to a melter without accounting for the profits; (8) Margolies caused F & M, Inc. to pay maintenance and expenses of a cooperative apartment owned by his wife; (9) Margolies and Klein borrowed money from F & M, Inc. without repaying it; (10) Margolies caused F & M, Inc. to pay more than $350,000 in personal expenses to a restaurant; (11) Margolies caused F & M, Inc. to rent three apartments from Wards for his personal use; and (12) the Margolies/Klein Defendants caused F & M, Inc. to pay numerous family and personal expenses.

As a result, on November 4, 1989, Plaintiffs commenced the O & D Action for breach of fiduciary duty (Count One), breach of contract (Count Two), usurpation of corporate opportunity (Count Three), corporate waste (Count Four), fraudulent conveyance (Count Five), conspiracy to commit common law fraud (Count Six), securities fraud (Count Seven) and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* (Count Eight).

### III. The Accountants Action

On November 27, 1989, plaintiffs commenced the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                  Page 3
Not Reported in F.Supp., 1995 WL 33631 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,642
**(Cite as: Not Reported in F.Supp.)**

Accountants Action, alleging that the Accountants issued opinions on financial statements knowing or recklessly disregarding the fact that: (1) they had not performed the examinations or rendered their opinions in accordance with generally accepted auditing standards; (2) the financial statements upon which they rendered opinions contained material omissions and misrepresentations; and (3) the F & M Companies and their shareholders relied on these opinions and certifications to make business decisions. Plaintiffs allege further that the Accountants participated in and aided and abetted a conspiracy to conceal adverse material information about the F & M Companies' financial condition.

**\*3** The complaint in the Accountants Action (the "Accountants Complaint" or "Complaint") states a claim for breach of contract (Count One), negligence (Count Two), fraud (Count Three), aiding and abetting fraud (Count Four), conspiracy to defraud (Count Five), aiding and abetting and/or conspiracy to commit securities fraud (Count Six) and violations of the RICO statute (Count Seven). With respect to the fraud count, plaintiffs allege that the Accountants "committed fraud in connection with their respective examinations and reports of the financial statements of" the F & M Companies from 1985 to 1989. *See* Accountants Complaint at ¶ 113. For aiding and abetting common law fraud, plaintiffs allege that the Accountants "aided and abetted the frauds committed by Margolies and Klein and others" from 1985 through 1989. *Id.* at ¶ 114. Similarly, the conspiracy to defraud count alleges that the Accountants "joined a conspiracy [sic] the purpose and effect of which was to defraud" the F & M Companies and its public stockholders from 1985 through 1989. *Id.* at ¶ 115.

In Count Six, plaintiffs allege that the Accountants "conspired and/or aided and abetted violations of 10b-5." *Id.* at ¶ 116. For Count Seven, plaintiffs allege that the defendants:
[E]ngaged in a pattern of racketeering activity by committing at least two acts of mail or wire fraud yearly, and conducted the affairs of the enterprise through a pattern of racketeering and their activities regarding the enterprise in question, viewed as a whole, indicated that those acts posed a threat of continuing racketeering activity.

*Id.* at ¶ 121. Subsequently, in February 1993, the Accountants moved, pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1) and (6) and 56, to dismiss, or alternatively, for partial summary

judgment dismissing the Accountants Complaint in its entirety.

### IV. Third-Party Complaints

On June 7, 1991, PM & S commenced a third-party action for indemnity against Gertrude Margolies, individually and as the representative of the estate of Margolies, Klein, Judith Klein, Miller, Goldstein and Manus.[FN4] Specifically, PM & S alleges that Manus is the subject of a final injunction, dated December 16, 1981, in an action entitled *SEC v. General Host Corp.,* 73 Civ. 275 (S.D.N.Y. March 19, 1975) (the "1981 Injunction"). The 1981 Injunction bars Manus from selling or transferring securities without (1) informing the buyer or transferee of the 1981 Injunction; and (2) notifying the SEC of the name and address of the buyer or transferee. The third-party complaints allege, however, that Manus violated the 1981 Injunction by selling shares of F & M, Ltd. to at least one and possibly all of the plaintiffs, and by transferring substantial quantities of F & M, Ltd. stock to trusts managed by plaintiff ITCOB. In connection with these sales, Manus agreed to indemnify plaintiffs for any losses they may incur in connection with their ownership of F & M, Ltd. stock.

**\*4** According to the third-party complaints, during the period 1985 through 1988, Manus, through his involvement as an investor in the F & M Companies, exerted control and influence over the financial and business operations of the F & M Companies to the shareholders' detriment. Manus's activities allegedly included, *inter alia,* (1) the fraudulent manipulation of the market value of F & M, Ltd. stock; and (2) causing related party transactions which resulted in financial detriment to the F & M Companies.

### V. The Bankruptcy Actions

On May 19, 1989, the F & M Companies and TMI (the "Debtor Corporations") filed petitions for reorganization under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Proceedings").[FN5] Subsequently, on June 5, 1989, the Committee was appointed by the United States Trustee for the Southern District of New York pursuant to Bankruptcy Code § 1102.[FN6] Under the confirmed Plan of Liquidation, the tangible assets of the Debtor Corporations were sold and all

Not Reported in F.Supp.                                                                                               Page 4
Not Reported in F.Supp., 1995 WL 33631 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,642
**(Cite as: Not Reported in F.Supp.)**

derivative claims were assigned to the Committee.

Thereafter, in August 1989, the Bankruptcy Court permitted the law firm of Deutsch & Frey to intervene in the Bankruptcy Proceedings on behalf of F & M, Ltd.'s minority shareholders. Deutsch & Frey then commenced the instant actions on their behalf.

By Stipulation and Order dated March 7, 1990, the Bankruptcy Court authorized the Committee to commence actions against the F & M Companies' officers, directors, accountants and others, or to move to intervene in the instant actions. Subsequently, by Stipulation and Order dated September 10, 1992, the Committee agreed that Deutsch & Frey would litigate the instant actions on their behalf. On March 26, 1993, the Bankruptcy Court permitted the Committee to retain Deutsch & Frey as special counsel on an interim basis to represent it in this Court. Thereafter, on August 4, 1993, the Committee moved to intervene in both actions.

## VI. Special Master's Report

By Order dated January 8, 1992, the Court appointed Edward Brodsky as Special Master to supervise and conduct settlement discussions in the O & D and Accountants Actions. Subsequently, on December 14, 1992, the Court enlarged Special Master Brodsky's authority by permitting him to set briefing schedules, hear motions made by the parties and report to the Court on those motions.

On May 13, 1994, Special Master Brodsky issued a Report and Recommendation (the "Report") recommending that (1) plaintiffs' complaints in both actions be dismissed to the extent that they allege a class action or individual shareholder claims; (2) ITCOB's motion to withdraw as plaintiff in both actions be granted and the counterclaims asserted against it by the Margolies/Klein Defendants in the O & D Action be dismissed with prejudice; and (3) the Manus Defendants' motion to sever and dismiss the third-party claims asserted against them in the O & D Action be granted.[FN7]

**\*5** None of the parties objected to these recommendations. The Court has reviewed the Special Master's Report with respect to these motions and, for the reasons set forth therein, agrees with its recommendations. Accordingly, (1) plaintiffs' complaints in both actions are dismissed to the extent

that they allege either a class action or individual shareholder claims; (2) ITCOB's motion to withdraw as plaintiff is granted and the counterclaims asserted against it by the Margolies/Klein Defendants in the O & D Action are dismissed with prejudice; and (3) the Manus Defendants' motion to sever and dismiss the third-party claims asserted against them in the O & D Action is granted.

### A. Intervention

The Report recommends further that, while the Committee's motion to intervene pursuant to Federal Rules of Civil Procedure 24(a)(1) and (b)(1) should be denied, the Committee's motion to intervene pursuant to Rules 24(a)(2) and (b)(2) should be granted. As an initial matter, the Report found that the Committee has standing to move to intervene in a shareholders' derivative action.

The Report next considered the Committee's motion to intervene pursuant to Rule 24(a). With respect to Rule 24(a)(1), Special Master Brodsky found that, as Bankruptcy Code § 1109(b) does not grant a party in interest an unconditional right to intervene in an adversary proceeding, the Committee does not have an unconditional right to intervene pursuant to Rule 24(a)(1).

The Special Master concluded, however, that the Committee satisfied the requirements of Rule 24(a)(2). First, as the Committee moved to intervene as soon as it became clear that the existing plaintiffs no longer were protecting the interests of the Debtor Corporations, the Special Master concluded that the motion was timely. Second, Special Master Brodsky found that the Committee has a protected interest in the actions. Third, the Report concluded that, without intervention, the Committee's ability to protect the interests of itself and the Debtor Corporations would be impaired. Fourth, in light of the fact that ITCOB no longer is a plaintiff in the actions, the Report concluded that the interests of the Debtor Corporations and the Committee may not adequately be protected by the remaining plaintiffs.[FN8] Accordingly, the Report recommended that the Committee's motion to intervene as of right, pursuant to Rule 24(a)(2), be granted.

Turning to permissive intervention, the Report concluded that the Committee's motion to intervene pursuant to Rule 24(b)(1) should be denied but that it

Not Reported in F.Supp.                                                                                                    Page 5
Not Reported in F.Supp., 1995 WL 33631 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,642
**(Cite as: Not Reported in F.Supp.)**

should be permitted to intervene pursuant to Rule 24(b)(2). Specifically, Special Master Brodsky found that, as the Bankruptcy Code does not implicitly grant a creditors committee a conditional right to initiate suit, the Committee's motion to intervene pursuant to Rule 24(b)(1) should be denied. The Report concluded, however, that the Committee satisfied the conditions of Rule 24(b)(2). First, the Special Master found that the Committee's motion to intervene was timely. Second, the Report determined that the claims asserted by the Committee raised questions of fact and law in common with the derivative claims asserted on behalf of the Debtor Corporations. Third, the Special Master determined that any prejudice to the Accountants in the form of greater legal fees and costs is outweighed by the Committee's interest in pursuing claims that otherwise would be lost. Accordingly, the Report recommended that the Committee's motion to intervene pursuant to Rule 24(b)(2) be granted.[FN9]

B. The Accountants' Motions to Dismiss

**\*6** The Special Master next addressed the Accountants' motions to dismiss, or alternatively, for summary judgment dismissing the Accountants Complaint. With respect to the RICO count, Special Master Brodsky concluded that plaintiffs had failed to state a claim upon which relief may be granted. Specifically, the Special Master found that plaintiffs failed to allege the predicate acts of mail and wire fraud with specificity and failed to demonstrate how the alleged predicate acts of fraud were related and continuous. In addition, with respect to its claim under RICO § 1962(c), the Special Master determined that plaintiffs failed to allege that the Accountants had participated in the "operation or management" of the enterprise. With respect to their claim under RICO § 1962(d), the Special Master found that plaintiffs failed to allege the existence of an agreement to commit the alleged predicate acts. Accordingly, the Special Master recommended that the Accountants' motion to dismiss plaintiffs' claims under RICO §§ 1962(c) and (d) be granted with leave to replead the required elements with specificity.

Turning to plaintiffs' claims for aiding and abetting and/or conspiracy to commit securities fraud, Special Master Brodsky concluded that the Supreme Court's recent decision in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 114 S.Ct. 1439 (1994) ("*Central Bank*") precluded plaintiffs from alleging a cause of action for aiding

and abetting a violation of Rule 10b-5. In *Central Bank,* the Supreme Court determined that, as the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (the "1934 Act") did not contain an express cause of action for aiding and abetting, it was unlikely that Congress would have included aiding and abetting liability as a cause of action under § 10(b) of the 1934 Act. *Id.* at 1449. Accordingly, the Supreme Court held that a private plaintiff could not maintain an aiding and abetting suit under § 10(b). *Id.* at 1455.

Addressing plaintiffs' conspiracy claim, the Special Master concluded that, although not expressly decided in *Central Bank,* the Supreme Court's reasoning in that case implicitly precluded a private plaintiff from maintaining a cause of action for conspiracy to violate Rule 10b-5. Accordingly, the Special Master recommended that plaintiffs' claim for aiding and abetting and/or conspiracy to commit securities fraud be dismissed with prejudice.

With respect to plaintiffs' claims for common law fraud and aiding and abetting common law fraud, Special Master Brodsky found that plaintiffs' conclusory allegations failed to allege with specificity the required elements of knowledge or recklessness. Similarly, with respect to plaintiffs' claim for conspiracy to defraud, the Special Master concluded that plaintiffs failed to allege with specificity how the Accountants conspired to defraud the Debtor Corporations. Accordingly, the Special Master recommended that the Accountants' motion to dismiss plaintiffs' claims for common law fraud, aiding and abetting common law fraud and conspiracy to defraud be granted with leave to replead the required elements with specificity.

**\*7** The Special Master next recommended that the Accountants' motion to dismiss plaintiffs' claims for negligence and breach of contract be denied. In making this determination, the Special Master listed eight examples of sworn deposition testimony taken of the Accountants that raised disputed issues of fact as to whether the Accountants' behavior in preparing the F & M Companies' financial statements, issuing opinions and conducting examinations constituted negligence and breach of contract. Taken together, the Special Master found that the allegations of the Complaint and the Accountants' own testimony sufficiently set forth claims for negligence and breach of contract to survive the Accountants' motion to dismiss.

Not Reported in F.Supp.                                                                                                  Page 6
Not Reported in F.Supp., 1995 WL 33631 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,642
**(Cite as: Not Reported in F.Supp.)**

### C. Supplemental Jurisdiction and Costs

Special Master Brodsky then addressed the Accountants' motion to dismiss plaintiffs' state law claims for lack of jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and their motion to compel plaintiffs to post security for costs. With respect to the jurisdictional issue, the Special Master recommended that the Accountants' motion to dismiss plaintiffs' state law claims be denied. The Special Master noted that a district court may exercise supplemental jurisdiction over a plaintiff's state law claims even after it has dismissed all claims over which it had original jurisdiction. He concluded that, "[d]ue to the amount of time, effort and money which has been expended to date in these actions, and the complex issues of fact and law which have been presented, I recommend that this Court exercise supplemental jurisdiction over plaintiffs' state law claims." Report at 35.

Finally, the Special Master recommended that the Accountants' motion to compel plaintiffs to post security for costs be denied. Specifically, the Special Master found that, as the Bankruptcy Court consented to the commencement of the derivative actions on behalf of the Debtor Corporations, plaintiffs should not be compelled to post security for costs.

### DISCUSSION

### I. Plaintiffs' Objections to the Report [FN10]

Plaintiffs object to the Special Master's recommendation that the Court dismiss their securities claim with prejudice.[FN11] According to plaintiffs, the Special Master mistakenly interpreted their securities claim as stating a cause of action for aiding and abetting liability and/or conspiracy, rather than for primary liability. In addition, plaintiffs argue that the Special Master erred in finding that *Central Bank* precludes a cause of action for conspiracy to violate the securities laws. For the reasons set forth below, the Court finds that both of plaintiffs' arguments lack merit.

### A. Primary Liability

While finding that a private plaintiff cannot maintain an aiding and abetting suit under Section 10(b) of the 1934 Act, the Supreme Court in *Central Bank*

indicated that:
Any person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b-5, assuming *all* of the requirements for primary liability under Rule 10b-5 are met.

**\*8** *Central Bank v. First Interstate Bank of Denver, N.A.,* 114 S.Ct. at 1455 (emphasis in original). In the instant case, however, plaintiffs failed to allege a cause of action for primary liability against the Accountants. Rather, the Complaint merely states that the Accountants "conspired and/or aided and abetted violations of 10b-5." Complaint at ¶ 116. Accordingly, plaintiffs' argument that it actually stated a claim for primary liability is not well-taken.

Plaintiffs maintain that, if the Complaint does not state a claim for primary liability, then they should be granted leave to amend it. A party may amend its pleading once as a matter of right before a responsive pleading has been served, otherwise it may do so by leave of the court, and such "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991), *cert. denied,*112 S.Ct. 1561 (1992). Where a plaintiff is unable to allege any facts sufficient to support its proposed claim, however, leave should be denied. *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d at 48;*see also New York v. Cedar Park Concrete Corp.,* 741 F.Supp. 494, 496 (S.D.N.Y.1990) (finding that leave may be denied where amendment would be futile). Thus, the Court looks to whether plaintiffs have alleged sufficient facts to support a claim for primary liability under Section 10(b) and Rule 10b-5.

Section 10(b) provides that:
It shall be unlawful for any person ... [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe.

15 U.S.C. § 78j. Rule 10b-5 similarly provides that it shall be unlawful for any person to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 7
Not Reported in F.Supp., 1995 WL 33631 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,642
**(Cite as: Not Reported in F.Supp.)**

statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). In order to establish a *prima facie* case for a primary violation of Section 10(b) or Rule 10b-5, plaintiffs must allege (1) a misrepresentation or omission of material facts; (2) intent on the part of a defendant to deceive, manipulate or defraud; (3) concerning the purchase or sale of securities; (4) the use of the mails or of any facility of a National Securities Exchange; and (5) damage to the plaintiff. *Shumate v. McNiff,* 88 Civ. 6820, 1990 WL 6549, at *3-4, 1990, U.S.Dist. LEXIS 547, at *9 (S.D.N.Y. Jan. 22, 1990) (citing *Lloyd v. Industrial Bio-Test Labs., Inc.,* 454 F.Supp. 807, 810 (S.D.N.Y.1978)). Plaintiffs must also show reliance on the defendant's misstatement or omission to establish a violation of Rule 10b-5. *Basic Inc. v. Levinson,* 485 U.S. 224, 243 (1988) ("Reliance provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury.").

### 1. Purchase or Sale of Securities

**\*9** The Accountants first contend that a cause of action based on primary liability necessarily would fail because plaintiffs cannot establish an actionable purchase or sale of securities. It is well-established that plaintiffs must have purchased or sold the security at issue to recover damages for the defendants' misrepresentations. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 749 (1975). Where the action is derivative, *i.e.,* brought on behalf of the corporate issuer, the issuer itself must have been a purchaser or seller of the securities. *Id.* at 738.

Paragraph 117 of the Accountants Complaint states that "[t]he stock of TMI, ICC, CCI, Rogold and F & M Santo were securities within the meaning of the Act." *See* Accountants Complaint at ¶ 117. The Accountants argue, however, that none of these stocks were purchased or sold to either the F & M Companies or TMI. The Court will examine the allegations of the Complaint with respect to each of these stocks in turn.

### a. TMI

The Accountants first argue that a sale of TMI to F & M, Inc. did not take place. In support of this argument, they point to Klein's deposition testimony wherein he stated that Margolies "entered into a

contract to sell TMI to Faleck & Margolies for a price of $400,000 which was never paid and that's how Faleck & Margolies wound up with the TMI stock." *See* Selected Pages From the Tr. of the Dep. of Third-Party Def. Martin Klein, annexed to the Affidavit of Edward J. Boyle, sworn to on 2/12/93, at 129-30. While the question of whether the purchase price actually was paid is an issue of fact, Klein does not deny that TMI stock was transferred to F & M, Inc. Accordingly, the Accountant's argument that there was no sale of TMI securities is unpersuasive.

### b. ICC and CCI

With respect to the securities of ICC and CCI, the Accountants Complaint alleges that, in late 1985, Margolies caused F & M, Inc. to purchase all of the common stock of ICC and a 37 1/2 percent interest in CCI. *See* Complaint at ¶¶ 49, 55. The Complaint alleges further that, in 1986, Margolies caused these transactions to be cancelled. *Id.* at ¶¶ 51, 55. According to the Accountants, as the Complaint alleges that the attempted sales were reversed, F & M, Inc. was not involved in a purchase or sale of securities within the meaning of Section 10(b). In response, plaintiffs argue that the parties entered into contracts for the sale of these securities, full performance of which was thwarted only by Margolies' fraudulent conduct.

A contract to purchase or sell securities is expressly defined as a purchase or sale of securities under the securities laws. 15 U.S.C. §§ 78c(a)(13), (14); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. at 750. Moreover, under the "aborted purchaser-seller doctrine," if a plaintiff has a contract to buy or sell a security, the contract right will satisfy the rule, even if it was breached. *Securities Investor Protection Corp. v. Vigman,* 803 F.2d 1513, 1518 (9th Cir.1986); *see also Walling v. Beverly Enters.,* 476 F.2d 393, 396 (9th Cir.1973) (finding that entering into a contract of sale with the secret reservation not to fully perform it is a fraud cognizable under Section 10(b)).

**\*10** In the present case, the Accountants Complaint alleges that Margolies caused F & M, Inc. to purchase shares in ICC and CCI and that, several months later, Margolies allegedly caused F & M, Inc. to return these shares. Thus, as the Complaint clearly alleges a contract for the sale of ICC's and CCI's securities within the meaning of the 1934 Act, the allegations satisfy the "purchase or sale" requirement

Not Reported in F.Supp.                                                          Page 8
Not Reported in F.Supp., 1995 WL 33631 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,642
**(Cite as: Not Reported in F.Supp.)**

of the rule.

### c. F & M Santo

The Accountants also contend that the Complaint fails to allege a purchase or sale of F & M Santo's securities. Rather, the Complaint merely alleges that TMI paid F & M Santo's moving expenses and paid the expenses of running the F & M Santo plant in the Dominican Republic. While plaintiffs argue that F & M Santo's securities were sold in conjunction with the sale of TMI to F & M, Inc., the Complaint does not state such an allegation. Accordingly, plaintiffs cannot state a claim for securities fraud based on the purchase or sale of F & M Santo stock.

### d. Rogold

Similarly, the Accountants argue that the Complaint fails to allege a purchase or sale of Rogold's securities. In fact, the Complaint merely alleges that F & M, Inc. transferred monies and properties to Rogold and was required to transact business with Rogold without engaging in competitive bidding. *See* Complaint at ¶¶ 66, 67. Thus, as the Complaint fails to allege a purchase or sale of Rogold's securities, plaintiffs cannot state a cause of action for securities fraud based on allegations involving the Rogold stock. In sum, the Court finds that the Accountants Complaint alleges a sale of securities with respect to the stock of TMI, ICC and CCI.

### 2. "In Connection With" Requirement

Although the Court finds that the Accountants Complaint properly alleges a sale of securities, the analysis does not end there. Rather, Section 10(b) requires that the fraud be committed "in connection with" the purchase or sale of the securities at issue. *15 U.S.C. § 78j*; *see also Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985) ("A plaintiff seeking to recover for a violation of Section 10(b) must show that the act complained of caused the injury suffered."). Where a Section 10(b) claim is based on a specific misrepresentation, plaintiffs must establish "that 'the damage was either a direct result or a reasonably foreseeable result of the misleading statement.' " *Id.* (quoting *Globus v. Law Research Serv.,* 418 F.2d 1276, 1291 (2d Cir.1969), *cert. denied,* 397 U.S. 913 (1970)). "Even where a 10(b) claim is based not on specific misrepresentations or omissions, but rather

on a 'comprehensive scheme to defraud,' the plaintiff must still demonstrate causation in fact by showing that defendant's allegedly fraudulent activities were actually responsible for plaintiff's injuries." *Id.* (citing *Competitive Assocs. v. Laventhol, Krekstein, Horwath & Horwath,* 516 F.2d 811, 814 (2d Cir.1975)).

**\*11** To establish causation, plaintiffs must demonstrate " 'both *loss causation*-that the misrepresentations or omissions caused the economic harm-and *transaction causation*-that the violations in question caused the plaintiff to engage in the transaction in question.' " *Bennett v. United States Trust Co.,* 770 F.2d 308, 313 (2d Cir.1985) (quoting *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 380 (2d Cir.1974), *cert. denied,* 421 U.S. 976 (1975)) (emphasis in original), *cert. denied,* 474 U.S. 1058 (1986). Thus, plaintiffs must show that the misrepresentation induced the purchase and was related to the stock's value. This plaintiffs cannot do.

The Accountants Complaint alleges that Margolies agreed to have TMI acquired by F & M, Inc..... He transferred TMI to F & M, Inc. in early 1988.... At that time TMI was insolvent and owed hundreds of thousands of dollars to F & M, Inc. Nevertheless, [Margolies] sold the insolvent TMI to F & M, Inc. for $528,000 (which was later reduced to $400,000), plus cancelling of its indebtedness to F & M, Inc.

Accountants Complaint at ¶ 65. With respect to the ICC and CCI stocks, the Complaint similarly alleges that "Margolies caused F & M, Inc. to purchase all of the common stock of ICC," *id.* at ¶ 49, and that "Margolies caused F & M, Inc. to agree to purchase his 37 1/2 % interest in CCI." *Id.* at ¶ 54. Thus, the Complaint clearly alleges that F & M, Inc. purchased TMI, ICC and CCI at Margolies' direction and for his benefit.

The Complaint fails to allege, however, that the Accountants' misstatements induced F & M, Inc. to purchase these stocks. Rather, with respect to the alleged misstatements made by the Accountants, the Complaint alleges, *inter alia,* that the Accountants (1) recorded the ICC and CCI transactions without disclosing that the purchase prices were dictated by Margolies and were substantially inflated; (2) failed to disclose ICC's and CCI's business relationship with F & M, Inc.; (3) failed to disclose the rescission of the ICC and CCI transactions; (4) deleted the ICC and CCI transactions from the balance sheet without

Not Reported in F.Supp.　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 9
Not Reported in F.Supp., 1995 WL 33631 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,642
**(Cite as: Not Reported in F.Supp.)**

adequate explanation; (5) failed to establish a receivable or other asset for the $1.2 million of monies given to Margolies in the CCI and ICC transactions; (6) failed to accrue interest income at market interest on the monies owed by Margolies to F & M, Inc. as a result of the rescission of the ICC and CCI transactions; (7) failed to disclose TMI's business relationship with F & M, Inc.; and (8) failed to disclose the true consideration underlying the sale of TMI to F & M, Inc. Nowhere to be found is any indication that F & M, Inc. purchased stock at the Accountants' urging.

Accordingly, the Court finds that plaintiffs cannot meet the "in connection with" requirement of Section 10(b). Thus, as any amendment of the Accountants Complaint to allege a primary violation of the securities laws would be futile, plaintiffs' request for leave to amend the Complaint is denied.[FN12]

### B. Conspiracy

***12** Plaintiffs next argue that the Special Master erred in extending the rationale of *Central Bank* to a claim for conspiracy to violate the federal securities laws. According to plaintiffs, conspiracy is a claim for primary liability, unlike aiding and abetting, which states a claim for secondary liability. The Court finds, however, that this argument does not withstand scrutiny.

In *Central Bank,* the Supreme Court held that a private plaintiff may not maintain a claim for aiding and abetting under Section 10(b). Specifically, the Supreme Court found that the text of the 1934 Act does not itself reach those who aid and abet a Section 10(b) violation. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 114 S.Ct. at 1448. Analyzing the express causes of action set forth in the securities laws, the Court then inferred that "Congress likely would not have attached aiding and abetting liability to § 10(b) had it provided a private § 10(b) cause of action." *Id.* at 1449. The Court concluded that "[i]t is inconsistent with settled methodology in § 10(b) cases to extend liability beyond the scope of conduct prohibited by the statutory text." *Id.* at 1448.

In his Report, the Special Master determined that plaintiffs' conspiracy claim
suffers the same fate as the claim for aiding and abetting a violation of Rule 10b-5. Since neither §

10(b), nor any other express cause of action under the 1934 Act, contains any statutory language making conspiring to violate § 10(b) a violation of the 1934 Act, the Supreme Court's holding in *Central Bank* precludes such an action by plaintiffs.

*See* Report at 25. The Special Master reasoned further that "[t]o permit a private plaintiff to maintain an action for conspiracy to violate Rule 10b-5 would make *Central Bank of Denver* meaningless, since virtually every aiding and abetting claim can be alleged as a conspiracy claim." *Id.*

In an opinion rendered subsequent to *Central Bank,* the Northern District of California similarly found that "[t]he Court's rationale in *Central Bank of Denver* also forecloses Plaintiffs' conspiracy liability theory." *In re Syntex Corp. Sec. Litig., 855 F.Supp. 1086, 1098 (N.D.Cal.1994).* According to the *Syntex* court:
Section 10(b) is silent as to conspiracy liability and there is no provision in the securities statutes authorizing a private cause of action for such conduct. Moreover, that other statutes contain express provisions imposing liability for conspiracy suggests that Congress did not intend § 10(b) to do the same.

*Id.*

The Court agrees with the opinion of the *Syntex* court and the reasoning of the Special Master's Report. Accordingly, plaintiffs' claim for aiding and abetting and/or conspiracy to commit securities fraud is dismissed with prejudice.

### II. The Accountants' Objections

#### A. Rule 24(a)(2)

The Accountants first object to the Report's recommendation granting the Committee's motion to intervene, pursuant to *Federal Rule of Civil Procedure 24(a)(2).* To secure the right to intervene under that section, a proposed intervenor must (1) file a timely motion; (2) establish an interest in the action; (3) demonstrate that its interest would be impaired by an unfavorable disposition; and (4) show that its interest is not otherwise adequately protected. *Fed.R.Civ.P. 24(a)(2); Farmland Dairies v. Comm'r of the N.Y. State Dep't of Agric. and Mkts., 847 F.2d 1038, 1043 (2d Cir.1988)* (quoting *United States v.*

Not Reported in F.Supp.                                                                                      Page 10
Not Reported in F.Supp., 1995 WL 33631 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,642
**(Cite as: Not Reported in F.Supp.)**

*New York,* 820 F.2d 554, 556 (2d Cir.1987)). The Accountants object to the Special Master's recommendation permitting intervention on the grounds that the Committee did not file a timely motion and it cannot establish an interest in the action. The Court will consider each of these objections in turn.

### 1. Timeliness

**\*13** The Accountants first argue that the Committee's application to intervene is untimely. According to the Accountants, the relevant time for intervention started to run in late 1989 when the Debtor Corporations first sought bankruptcy protection. Alternatively, the Accountants argue that the time for intervention commenced when Deutsch & Frey obtained Bankruptcy Court approval to initiate the actions. Under either theory, the Accountants claim that the Committee's motion is untimely.[FN13] The Court disagrees.

To determine the timeliness of a motion to intervene, the Court looks to:
(1) the length of time the applicant knew or should have known of his interest before making the motion; (2) prejudice to existing parties resulting from the applicant's delay; (3) prejudice to the applicant if the motion is denied; and (4) the presence of unusual circumstances militating for or against a finding of timeliness.

*Farmland Dairies v. Comm'r of the N.Y. State Dep't of Agric. and Mkts.,* 847 F.2d at 1043 (citing *United States v. New York,* 820 F.2d at 557).

### a. Length of Time

Examining the first prong of this test, the Court concludes that the Committee promptly moved to intervene as soon as it was apprised of the fact that the existing plaintiffs were not adequately representing their interests. Thus, while the Committee arguably could have sought intervention when the Bankruptcy Court permitted Deutsch & Frey to initiate the actions, the record shows that the Committee presumed that the named plaintiffs would adequately protect their interests. In fact, it was not clear that the Committee's interests would no longer be protected by the named plaintiffs until some of the plaintiffs moved to withdraw.[FN14] As the Committee properly moved to intervene soon thereafter, the

Court finds that the Committee's motion to intervene was timely. *See United Airlines, Inc. v. McDonald,* 432 U.S. 385, 394 (1977) (finding that respondent's motion was timely when she moved to intervene as soon as it became clear that her interests would no longer be protected by the named class representatives); *Alleghany Corp. v. Kirby,* 344 F.2d 571, 574 (2d Cir.1965) (same), *cert. dismissed,* 384 U.S. 28 (1966).

### b. Prejudice

Turning to the second and third prongs of the timeliness test, the Court agrees with Special Master Brodsky that "[t]he Accountants['] arguments regarding prejudice are not well taken." *See* Report at 50. Specifically, the Accountants argue that, as substantial discovery already has been conducted and numerous hearings held, they would be unduly prejudiced if the Committee were permitted to intervene at this late juncture. While the Accountants conclusively state that "the Debtors' claims differ and will require different and more extensive discovery," *see* Gordon B. Lee's Objections to Special Master Brodsky's Report and Recommendations at 4, they fail to indicate what further discovery would be necessary upon the intervention of the Committee. This issue is particularly significant as the Committee has acknowledged that "the claims and the defenses will remain the same." *See* Resp. to Objections by Defs. to the Report and Recommendations of Special Master Edward Brodsky dated May 13, 1994, at 8. Upon considering the potential prejudice to all parties, the Court agrees with the Special Master that:
**\*14** In balancing the respective interests of the parties, the Accountants' desire to take additional depositions and, in turn, incur additional costs, does not outweigh the interest of the Creditors Committee in pursuing these claims some of which would otherwise be lost, not on the merits, but because no non-withdrawing party has standing to sue.

*Id.* Accordingly, the Court finds that intervention is timely.[FN15]

### 2. Interest in the Action

The Accountants next contend that the Committee's intervention motion must be denied because the Committee has no interest to protect in this action. Specifically, the Accountants argue that the F & M Companies benefitted from the acts upon which the

Not Reported in F.Supp.                                                                                    Page 11
Not Reported in F.Supp., 1995 WL 33631 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,642
**(Cite as: Not Reported in F.Supp.)**

Committee is now suing such that the Committee cannot recover in F & M's name for the Accountants' alleged malpractice. For the reasons set forth below, the Court finds that the Accountants' objections lack merit.

It is well-settled that "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation." *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 120 (2d Cir.1991). This principle is based on agency law, which holds that the acts and knowledge of an agent acting in the scope of his agency are imputed to the principal. *In re Wedtech Sec. Litig.,* 138 B.R. 5, 9 (S.D.N.Y.1992) (citing *Center v. Hampton Affiliates, Inc.,* 66 N.Y.2d 782, 497 N.Y.S.2d 898, 899, 488 N.E.2d 828 (1985)). Thus, once the corporation's agent is found to have been acting within the scope of his agency, the corporation is considered a "sharer in common liability" with the agent. *In re Wedtech Sec. Litig.,* 138 B.R. at 8 (citing *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d at 120). "The relevant issue is short term benefit or detriment to the corporation, not any detriment to the corporation resulting from the unmasking of the fraud." *In re Wedtech Corp.,* 81 B.R. 240, 242 (S.D.N.Y.1987).

This general principle, however, is subject to the "adverse interest" exception. Under this exception:
[W]hen an agent is engaged in a scheme to defraud his principal, either for his own benefit or that of a third person, the presumption that knowledge held by the agent was disclosed to the principal fails because he cannot be presumed to have disclosed that which would expose and defeat his fraudulent purpose.

*Center v. Hampton Affiliates, Inc.,* 497 N.Y.S.2d at 899-900. For the "adverse interest exception" to apply, "the agent must have totally abandoned his principal's interests and be acting entirely for his own or another's purposes." *Id.* at 900. In the instant case, the Accountants' Complaint alleges that the O & D Defendants conspired to "engage in a series of thefts of corporate properties and opportunities to enrich themselves at the expense of F & M, Inc. and the shareholders of F & M, Ltd," and that the Accountants "joined in, and aided and abetted the conspiracy." *See* Complaint at ¶ 47. Thus, rather than benefitting from the alleged fraud and malpractice of the O & D Defendants and the Accountants, the Complaint alleges that the F & M Companies were injured by the defendants' actions.

*15 The Accountants argue, however, that testimony of the Committee's expert witness establishes that F & M may have benefitted from the alleged misconduct. Specifically, Jack Weisbaum, of B.D.O. Seidman, testified that "the estate may have been benefitted by over statements of financial condition and by over statements of earnings in previous periods." *See* Dep. of Jack A. Weisbaum, taken on March 23, 1993, annexed to the Affidavit of Edward J. Boyle, sworn to on August 18, 1993, as Exh. "D," at 184. While this testimony creates an issue of fact whether the F & M Companies profited from certain of the defendants' activities, it does not refute other allegations of the Complaint concerning the Accountants' misstatements and omissions on financial statements. Accordingly, for the purposes of the Committees' intervention motion, the Court finds that the Committee has an interest in the subject matter of the action.

### B. Rule 24(b)(2)

The Special Master also recommended that the Court permit the Committee to intervene pursuant to Rule 24(b)(2). Rule 24(b)(2) provides that, upon timely application, anyone may be permitted to intervene in an action "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed.R.Civ.P. 24(b)(2).

"The rule of permissive intervention was intended to promote judicial economy by preventing multiple lawsuits where common questions of law or fact are involved." *Ceribelli v. Elghanayan,* 91 Civ. 3337, 1994 WL 529853, at *2, 1994 U.S.Dist. LEXIS 13681, at *5 (S.D.N.Y. Sept. 26, 1994). Factors for the Court to consider in ruling on such a motion include (1) whether the applicant will unduly delay or prejudice the adjudication of the original parties' rights; (2) whether the applicant will benefit from intervention; (3) the nature of the applicant's interests; (4) whether the applicant's interests are adequately represented by the other parties; and (5) whether the applicant will significantly develop the original suit's underlying factual issues and contribute to an equitable adjudication of the legal issues presented. *United States v. 36.46 Acres of Upland,* 113 F.R.D. 124, 127 (E.D.N.Y.1986) (citing *United States Postal Serv. v. Brennan,* 579 F.2d 188, 191-92 (2d Cir.1978)).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                  Page 12
Not Reported in F.Supp., 1995 WL 33631 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,642
**(Cite as: Not Reported in F.Supp.)**

PM & S argues that the Special Master erred in finding common questions of fact between the Committee's claims and the Accountants Complaint. Among other things, the Special Master concluded that both the Committee and the original plaintiffs claimed that the Debtor Corporations relied upon the Accountants' reports for making business decisions. According to PM & S, however, as the Accountants are charged only with improperly reporting transactions after they occurred, F & M could not possibly have relied on anything the Accountants did for making business decisions.

Even if plaintiffs ultimately cannot prove reliance, however, the Special Master delineated several other issues shared by the Committee and the original plaintiffs, including whether the Accountants (1) performed their examinations of the Debtor Corporations in accordance with GAAS; (2) prepared financial statements in accordance with GAAP; (3) made material omissions or misrepresentations in the financial statements; (4) breached their contracts of employment; and (5) are liable for negligence. In light of these common questions of fact, the Court finds that permissive intervention is appropriate.

### C. Dismissal With Prejudice

**\*16** The Accountants next argue that Special Master Brodsky mistakenly recommended that plaintiffs should be permitted to replead their claims for violations of the RICO statute. In addition, PM & S argues that plaintiffs should not be permitted to replead their claims for common law fraud, aiding and abetting common law fraud and conspiracy to defraud. Instead, the Accountants contend that these claims should be dismissed with prejudice.

The Special Master concluded that plaintiffs failed properly to allege a valid RICO claim because they failed to allege with specificity the predicate acts of mail and wire fraud and failed to demonstrate a pattern of racketeering activity. In addition, with respect to RICO § 1962(c), the Special Master concluded that plaintiffs failed to allege that the Accountants operated or managed the enterprise or participated in the operation or management of the enterprise. With respect to its claim under RICO § 1962(d), the Special Master found further that plaintiffs failed to allege any facts demonstrating the existence of an agreement to commit the alleged predicate acts of mail and wire fraud. Accordingly, the Special Master recommended dismissing the

RICO claim without prejudice to replead the required elements with specificity.

With respect to plaintiffs' common law fraud claims, the Special Master found that "[p]laintiffs' conclusory allegations fail to allege with specificity how the Accountants knew of, or recklessly disregarded, the Debtor Corporations' alleged false and misleading financial statements." Report at 27. Similarly, plaintiffs "failed to plead with specificity how the Accountants knowingly or recklessly aided and abetted the alleged scheme to defraud the Debtor Corporations * * * [and] how the Accountants conspired to defraud the Debtor Corporations." *Id.* at 29-30.

The Accountants argue that plaintiffs should not be given leave to replead the elements of their RICO claims because they cannot demonstrate either the required predicate acts, relatedness and continuity, or management or control of the enterprise. With respect to the fraud claims, PM & S argues further that these counts should be dismissed with prejudice because plaintiffs cannot show reliance by the F & M Companies on any misstatements made by the Accountants.

While plaintiffs ultimately may not be able to support their RICO and common law fraud claims, given the liberality with which amendments may be granted, *see* Fed.R.Civ.P. 15(a), the Court grants them leave to replead the required elements with specificity.[FN16] Accordingly, the Accountants' objections are meritless.

### CONCLUSION

For the reasons set forth above, the objections of plaintiffs and the Accountants to the Report lack merit. Rather, upon consideration, the Court agrees with the Report's recommendations. Accordingly, it is hereby

ORDERED that the Reports and Recommendations issued by Special Master Brodsky on May 13, 1994 and May 26, 1994 are accepted in accordance with Federal Rule of Civil Procedure 53(e). It is further

**\*17** ORDERED that (1) plaintiffs' claims to the extent that they allege a class action or individual shareholder claims are dismissed; (2) ITCOB's motion to withdraw as a plaintiff in both actions and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                      Page 13
Not Reported in F.Supp., 1995 WL 33631 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,642
**(Cite as: Not Reported in F.Supp.)**

to dismiss with prejudice the counterclaims asserted against it by the Margolies/Klein Defendants in the O & D Action is granted; (3) the Manus Defendants' motion to sever and dismiss the third-party claims asserted against them in the O & D Action is granted; and (4) plaintiffs' motion for an order substituting Frederick M. Glass, Jr., the executor under the last will and testament of Frederick M. Glass, as a plaintiff in these actions in place of Frederick M. Glass, deceased, is granted. It is further

ORDERED that the Accountants' motion (1) to dismiss plaintiffs' RICO claims is granted without prejudice to replead the required elements with specificity; (2) to dismiss plaintiffs' claims for conspiring and/or aiding and abetting violations of Rule 10b-5 is granted, and those claims are dismissed with prejudice; (3) to dismiss plaintiffs' claims for common law fraud, aiding and abetting common law and conspiracy to defraud is granted without prejudice to replead the required elements with specificity; (4) to dismiss or, alternatively, for summary judgment dismissing plaintiffs' negligence and breach of contract claims is denied; (5) to dismiss plaintiffs' pendent state law claims for negligence and breach of contract, pursuant to Rule 12(b)(1), is denied; and (6) to compel plaintiffs to post security for costs is denied. It is further

ORDERED that the Committee's motion to intervene in the Accountants' Action pursuant to Rules 24(a)(1) and 24(b)(1) is denied. The Committee's motion to intervene, pursuant to Rules 24(a)(2) and 24(b)(2), is granted. Plaintiffs and the Committee are ordered to file amended complaints in conformance with this Memorandum Opinion and Order within twenty (20) days. The parties shall appear before this Court for a pretrial conference on Wednesday, March 29, 1995, at 10:30 a.m.

SO ORDERED.

> FN1. The Committee also moved to intervene in the O & D Action. On May 13, 1994, Special Master Edward Brodsky recommended granting the Committee's motion pursuant to Federal Rules of Civil Procedure 24(a)(2) and 24(b)(2). No objections were filed to this recommendation and, by Order dated December 16, 1994, the Court granted the motion. Thereafter, on January 4, 1995, the Committee filed a complaint in that action.

FN2. Gertrude Margolies, individually and as representative of the estate of Abraham Margolies ("Margolies"), Martin Klein ("Klein") and Judith Klein (collectively, the "Margolies/Klein Defendants") also (1) move to dismiss, or alternatively, for partial summary judgment dismissing the complaint against them; (2) move to compel plaintiffs to post security for costs; and (3) cross-move to substitute the Committee as a plaintiff in these actions. These motions are held in abeyance pending the resolution of all issues relating to a proposed settlement of the O & D Action.

FN3. F & M, Inc. and F & M, Ltd. shall collectively be referred to as the "F & M Companies."

FN4. Subsequently, on October 23, 1991, Lee commenced an identical third-party action for indemnity against the same third-party defendants.

FN5. The petitions were administratively consolidated that same day.

FN6. Bankruptcy Code § 1102(a)(1) provides, in relevant part:
As soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims.
11 U.S.C. § 1102.

FN7. Subsequently, on May 26, 1994, Special Master Brodsky issued a Report and Recommendation recommending that plaintiffs' motion for an order, pursuant Federal Rule of Civil Procedure 25(a)(1), substituting Frederick M. Glass, Jr., the executor under the last will and testament of Frederick M. Glass, as a plaintiff in both actions for Frederick M. Glass, deceased, be granted. As none of the parties object to this recommendation, the Court accepts it and orders that the captions in both actions be amended accordingly.

FN8. Specifically, the Special Master noted

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that ITCOB owned shares in F & M, Ltd. at times when the non-withdrawing plaintiffs did not. Accordingly, if the Committee were not permitted to intervene, certain transactions would not be subject to attack, as no plaintiffs were shareholders when those alleged transactions took place.

FN9. The Report found, however, that the Committee's proposed complaints do not comply with the requirements of Federal Rule of Civil Procedure 8. It therefore recommended that the Committee be granted leave to file amended complaints in conformance with Rule 8.

FN10. In accordance with Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1)(C), the Court shall review de novo those portions of the Report to which the parties object.

FN11. Plaintiffs also indicate that the Special Master made a typographical error when he recommended that "the Accountants be given leave to replead their claims for common law fraud, aiding and abetting common law fraud, and conspiracy to defraud." See Report at 28 n. 11. The Court agrees and finds that the Report should state that "plaintiffs be given leave to replead their claims for common law fraud, aiding and abetting common law fraud, and conspiracy to defraud."

FN12. As the Court finds that plaintiffs cannot allege any misrepresentations in connection with the purchase or sale of a security, the Court shall not address the Accountants' reliance argument.

FN13. The Accountants argue further that the Committee's intervention motion is merely a ruse to circumvent the applicable statute of limitations. The Special Master responded to this argument by indicating that "[w]hile I recommend that the Creditors Committee's motion to intervene ... be granted, I take no position on whether, upon intervention, the Creditors Committee's claims would be barred by any appropriate statute of limitations. This issue was neither

briefed nor argued before me." See Report at 36 n. 16. As this issue has not been adequately briefed before the Court, the Court shall not consider it.

FN14. The Accountants argue that the Committee was notified that the minority shareholders were not proper derivative representatives when the Accountants filed their third-party complaints. The Court finds, however, that it was not clear that the Committee's interests would be inadequately represented until the plaintiffs moved to withdraw.

FN15. In permitting the Committee to intervene, however, the Committee may not allege claims that have been dismissed by this Memorandum Opinion and Order. To hold otherwise would "negate the preparation and time spent by the defendants on their motions for dismissal and/or summary judgment." Fleming v. Lind-Waldock & Co., 922 F.2d 20, 26 (1st Cir.1990).

FN16. Plaintiffs contend that the Accountants are liable for aiding and abetting a violation of Section 1962(c) even absent a finding that the Accountants personally participated in the operation or management of the enterprise. Plaintiffs are mistaken. To be liable for aiding and abetting a violation of Section 1962(c), a defendant must have (1) aided and abetted the commission of at least two predicate acts; and (2) participated in the operation or management of the enterprise. See Clark v. Milam, 847 F.Supp. 409, 416-17 (S.D.W.Va.1994) (stating that "an allegation of aiding and abetting, without any suggestion of control over the enterprise, is not enough to bring § 1962(c) liability into play"); Rolo v. City Investing Co. Liquidating Trust, 845 F.Supp. 182, 232 (D.N.J.1993) (same), aff'd,Nos. 94-5057, 94-5058, 1994 U.S.App. LEXIS 35,741 (3d Cir. Nov. 8, 1994); see also Amalgamated Bank v. Marsh, 823 F.Supp. 209, 220 (S.D.N.Y.1993) (finding that plaintiff's aiding and abetting allegation did not state a valid cause of action under Section 1962(c) as it failed to " 'indicate[ ] some degree of

Not Reported in F.Supp., 1995 WL 33631 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,642
**(Cite as: Not Reported in F.Supp.)**

        direction' as is now required by the Supreme Court").

S.D.N.Y.,1995.

In re Faleck & Margolies, Ltd.

Not Reported in F.Supp., 1995 WL 33631 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,642

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ONEX AMERICAN HOLDINGS, LLC, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-CV-263 (SLR) |
| | ) | |
| RICHARD M. KIPPERMAN, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| MAGNATRAX CORPORATION, | ) | Case No. 03-11402 (KG) |
| | ) | |
| Reorganized Debtor. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I, Jeffrey R. Waxman, certify that I am not less than 18 years of age, and that service of the Reply of Onex Corporation to Appellee's Response in Opposition to the Motion of Onex Corporation to Intervene was made on December 17, 2007 upon the parties listed below in the manner indicated.

## HAND DELIVERY

Richard L. Schepacarter, Esquire
Office of the United States Trustee
844 North King Street, Suite 2207
Wilmington, DE 19801

Joel A. Waite, Esquire
Matthew Lunn, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801

Christopher P. Simon, Esquire
Cross & Simon, LLC
913 N. Market Street, 11th Floor
Wilmington, DE 19801

**FIRST CLASS MAIL**

Peter W. Ito, Esquire
Baker & Hostetler LLP
303 E. 17th Avenue, Suite 1100
Denver, CO 80203

Andrew Kress, Esquire
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022

Catherine L. Steege, Esquire
Joel T. Pelz, Esquire
Peter A. Siddiqui, Esquire
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611

Under penalty of perjury, I declare that the foregoing is true and correct.

Dated:  December 17, 2007

COZEN O'CONNOR

Jeffrey R. Waxman (No. 4159)